E-L ENTERPRISES, INC., Plaintiff-Respondent,

v.

MILWAUKEE METROPOLITAN SEWERAGE DISTRICT,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2008AP921. Oral argument October 21, 2009.
—Decided July 2, 2010.*

2010 WI 58

(Also reported in 785 N.W.2d 409.)

For the defendant-appellant-petitioner there were briefs by *G. Michael Halfenger, William J. Katt, Jr.,* and *Foley & Lardner LLP,* Milwaukee, and *Michael J. McCabe, James H. Petersen, Lauri Ann Rollings,* and the *Milwaukee Metropolitan Sewerage District,* Milwaukee, and oral argument by *G. Michael Halfenger.*

For the plaintiff-respondent there were briefs by *Jerome R. Kerkman, Susan A. Cerbins, Joseph R. Cincotta,* and *Kerkman & Dunn,* Milwaukee, and oral argument by *Jerome R. Kerkman.*

An amicus curiae brief was filed by *Daniel M. Olson* and the *League of Wisconsin Municipalities,* Madison, on behalf of the League of Wisconsin Municipalities.

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals,[1] which affirmed the judgment entered on a jury verdict by Milwaukee County Circuit Court, Richard J. Sankovitz, Judge. The jury found that when constructing a sewer, the Milwaukee Metropolitan Sewerage District (the Sewerage District) unreasonably removed groundwater from the property of E-L Enterprises, Inc. (E-L), which caused E-L's building to settle and amounted to a taking of E-L's property without just compensation. The jury awarded E-L damages in the amount of $309,388.

¶ 2. The Sewerage District filed a motion for judgment notwithstanding the verdict on the grounds that the damages E-L suffered to its property were consequential damages resulting from governmental action and therefore were not compensable under the takings clause of the Wisconsin Constitution. Alternatively, the Sewerage District moved for a new trial based on insufficient evidence to support the verdict. The circuit court denied the Sewerage District's motions and awarded E-L its attorney fees and costs. The circuit court then entered judgment in the amount of $624,375.48 on behalf of E-L and against the Sewerage District.

¶ 3. The Sewerage District appealed, and the court of appeals affirmed. The Sewerage District petitioned this court for review, and we accepted. We now reverse the decision of the court of appeals.

¶ 4. This case presents the following issues: (1) whether the Sewerage District's conduct constituted a taking of E-L's property without just compensation in violation of Article I, Section 13 of the Wisconsin Con-

---

[1] *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 2009 WI App 15, 316 Wis. 2d 280, 763 N.W.2d 231.

stitution and the Fifth Amendment of the United States Constitution;[2] and (2) whether E-L has established an inverse condemnation claim under Wis. Stat. § 32.10 (2007–08),[3] entitling E-L to attorney fees and costs.[4]

¶ 5.  As a preliminary matter, we need not decide today the panoply of issues that relate to an alleged

---

[2] The issue of whether the Sewerage District's conduct constituted a taking under the U.S. Constitution was not invoked, argued, or appealed below. However, pursuant to our order, the parties briefed the issue before this court.

[3] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

Wisconsin Stat. § 32.10, "Condemnation proceedings instituted by property owner," provides:

> If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. The petition shall describe the land, state the person against which the condemnation proceedings are instituted and the use to which it has been put or is designed to have been put by the person against which the proceedings are instituted. A copy of the petition shall be served upon the person who has occupied petitioner's land, or interest in land. The petition shall be filed in the office of the clerk of the circuit court and thereupon the matter shall be deemed an action at law and at issue, with petitioner as plaintiff and the occupying person as defendant. The court shall make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so. If the court determines that the defendant is occupying such property of the plaintiff without having the right to do so, it shall treat the matter in accordance with the provisions of this subchapter assuming the plaintiff has received from the defendant a jurisdictional offer and has failed to accept the same and assuming the plaintiff is not questioning the right of the defendant to condemn the property so occupied.

[4] Pursuant to Wis. Stat. § 32.28(3), "litigation expenses shall be awarded to the condemnee if: . . . (c) The judgment is for the plaintiff in an action under s. 32.10."

87

taking of groundwater. In this case, E-L introduced no proof as to the value of the extracted groundwater.[5] Instead, E-L seeks damages for the cost to repair its building and for the loss of use of its wood piles. The Sewerage District did not physically occupy the property for which E-L seeks compensation, and no government-imposed restriction deprived E-L of all, or substantially all, of the beneficial use of its property. Accordingly, what remains are mere consequential damages to property resulting from governmental action, which are not compensable under constitutional takings law.[6] The damage to E-L's building was caused by the alleged negligent construction of the sewer; hence, E-L's claim sounds in tort and seeks damages for which the Sewerage District is not liable under the doctrine of governmental immunity. For the same reasons, we further conclude that E-L has failed to establish an inverse condemnation claim under Wis. Stat. § 32.10. E-L is therefore not entitled to attorney fees and costs under Wis. Stat. ch. 32. Accordingly, this court reverses the decision of the court of appeals.

---

[5] E-L sought damages for the cost to repair its building and the attorney fees and costs E-L incurred litigating with the neighbor who owned the adjacent alley and refused E-L access to make the repairs. At trial, E-L introduced proof of those damages. We are cognizant of the fact that the jury was asked to determine the sum of money that would "justly compensate E-L for the taking of the groundwater"; however, there was no proof introduced at trial as to the value of the extracted groundwater. *See infra* Part III.A.1.

[6] We have in this case "only damage, without appropriation to the public purpose," and therefore, E-L is unable to recover its damages on the theory of a constitutional taking for public use. *See Wis. Power & Light Co. v. Columbia Cnty.*, 3 Wis. 2d 1, 6–7, 87 N.W.2d 279 (1958).

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 6.    In the 1980s, the Sewerage District con-structed the Deep Tunnel System, a 19 mile long system of sewers across Milwaukee County "that help[s] reduce water pollution by storing excess wastewater 140 to 330 feet underground" until the wastewater can be treated at reclamation facilities.[7] The Deep Tunnel included the 1987–88 construction of the Crosstown 7 sewer (the sewer), a "near-surface collector sewer" that collects sewage overflow and diverts it away from the Menomonee River and into storage in the Deep Tunnel. The sewer was constructed for the Sewerage District by Bowles Contracting Inc./Tomasini Construction Inc. Joint Venture (BCI/TCI). Pursuant to the Sewerage District's contract with BCI/TCI, the means and meth-ods of the construction were left to BCI/TCI's discre-tion. The contract required BCI/TCI to avoid damage to neighboring buildings and to repair any damage caused by the removal of water from the construction site. Under the contract, BCI/TCI was responsible for any resulting damage to surrounding properties.

¶ 7.    To construct the sewer, BCI/TCI dug a trench, installed sewer pipes, and restored the surface. A portion of the sewer was constructed in the Sewerage District's easement under a private alley adjacent to the subject building owned by E-L on North 12th Street in Milwau-kee.[8] E-L's building was built in 1928 on "wood piles,"

---

[7] *See* the Milwaukee Metropolitan Sewerage District web-site http://v2.mmsd.com/deeptunnelhistory.aspx (providing the history of the Deep Tunnel System); http://v2.mmsd.com/deeptunnelhowitworks.aspx (explaining how the Deep Tunnel works).

[8] It is undisputed that neither BCI/TCI, the construction trench, nor the Sewerage District ever entered E-L's property.

long wooden poles that are capped with concrete and driven into the ground to provide support for the building's foundation. To prevent the wood piles from rotting and weakening, they must be sufficiently saturated with water.

¶ 8. However, in order for BCI/TCI to properly lay the sewer pipe and pour concrete, the trench had to be dry. Accordingly, BCI/TCI pumped groundwater from the trench for 17 days. When the sewer was completed in 1988, groundwater measurements showed that the level of groundwater near E-L's building had been significantly reduced. It took two years for the groundwater level to recover.

¶ 9. In 1998, about ten years after the sewer project was completed, E-L's owner, Joseph Loftus, noticed that cracks in the foundation of his building appeared to be worsening, so he started to monitor the building's settlement rate. In 2001, an engineer examined the building's wood piles and determined that the caps of 14 wood piles had rotted and were no longer able to support the building. Those particular wood piles were under the south wall of E-L's building, nearest to the 1987–88 sewer construction site. In September 2003, E-L notified the Sewerage District of the building damage, and in October, E-L repaired the building. To repair the building, the damaged portions of the wood piles were sawed off and replaced with concrete. The repairs cost a total of $309,388, which includes E-L's attorney fees incurred in litigation with a neighbor who owned the adjacent alley and refused E-L access to make the building repairs. It is undisputed that E-L continued to lease the building throughout this entire period.

¶ 10. On June 23, 2004, E-L filed suit against the Sewerage District and CNA Insurance Companies (CNA), the insurer for the now defunct BCI/TCI. E-L

alleged causes of action against the Sewerage District for negligence, continuing nuisance, and inverse condemnation and alleged causes of action against CNA for negligence and continuing nuisance.[9] The circuit court dismissed E-L's negligence and nuisance claims against the Sewerage District on the basis of governmental immunity under Wis. Stat. § 893.80(4).[10] Accordingly, only E-L's inverse condemnation claim remained.[11]

¶ 11. As to the inverse condemnation claim, E-L's complaint alleged that the Sewerage District's operation and maintenance of the Deep Tunnel System and the pipes constructed as a part of the sewer "physically took portions of the wood piles which rendered them unusable and damaged the E-L Building." E-L alleged that the Sewerage District's acts constituted a taking:

> [The Sewerage District's] conduct constitutes a taking of E-L Enterprises' property for public use.

---

[9] Before trial, CNA settled E-L's negligence and nuisance claims in a confidential agreement.

[10] Wisconsin Stat. § 893.80(4) provides:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

E-L did not appeal the circuit court's dismissal of its negligence and nuisance claims against the Sewerage District; accordingly, that issue is not before this court.

[11] Within its cause of action for "inverse condemnation," E-L alleged both a constitutional takings claim and an inverse condemnation claim under Wis. Stat. § 32.10, although § 32.10 was not expressly referenced.

91

> Specifically, [the Sewerage District's] conduct constitutes a physical invasion that deprived and continues to deprive E-L Enterprises of all beneficial use of the wood piles in violation [of] the Fifth Amendment of the United States Constitution and Article I, Section 13 of the Wisconsin Constitution.
>
> . . . .
>
> [The Sewerage District] took E-L Enterprises' property without paying E-L Enterprises its just compensation.

In addition to damages, E-L's complaint demanded attorney fees and costs relating to E-L's claim for inverse condemnation.[12]

¶ 12.  E-L's takings claim under Article I, Section 13 of the Wisconsin Constitution proceeded to a jury trial. The special verdict form asked the jury whether the Sewerage District's removal of groundwater from E-L's property was a taking. To assist the jury in answering that question, the circuit court instructed the jury that the law bars the government from taking property for public use without compensating the owner and that "[g]roundwater is considered property of the person who owns the land under which it flows."[13] If the jury found that the Sewerage District's removal of groundwater from E-L's property was a

---

[12] In its order on July 19, 2007, before trial, the circuit court denied E-L's request for attorney fees and costs on the grounds that E-L did not have a claim for inverse condemnation under Wis. Stat. § 32.10. After the trial, the circuit court reconsidered its earlier order and decided that E-L was entitled to attorney fees and costs under ch. 32. Accordingly, E-L's entitlement to attorney fees and costs is an issue before this court on appeal.

[13] The Sewerage District objected to the circuit court's instruction that "[g]roundwater is considered property of the person who owns the land under which it flows":

92

taking, the jury was required to answer whether the removal of groundwater from E-L's property caused E-L's building to settle. If the jury answered that question in the affirmative, the jury had to determine the sum of money that would "justly compensate E-L for the taking of the groundwater beneath the south end of [E-L's] building."

[The Court]: ... [The Sewerage District] deleted the sentence or propose to delete the sentence, "Groundwater is considered property of the person who owns the land under which it flows."

That statement is true. It's not their exclusive property. They don't have the right to exclude others from using it, but they do have the right to use it, and *Michels* [*State v. Michels Pipeline Constr., Inc.,* 63 Wis. 2d 278, 217 N.W.2d 339 (1974)] recognizes that they have a property interest in it.

So as a matter of fact, it is E-L's property, not its property alone, but it is E-L's property. Otherwise if E-L doesn't have any property interest in here, game over. This case ends. If it has no property interest in it, they cannot make a claim for just compensation.

[Attorney James H. Petersen, counsel for the Sewerage District]: Your Honor, I guess that's precisely the point the District is getting at. Groundwater is a common good. If you have property, you have a right to use the groundwater that passes underneath your land, and even some of the groundwater that's under your neighbor's land, by virtue of your property ownership.

But it doesn't mean that that groundwater is yours to the exclusion of others.

[The Court]: I'm not saying that either, and my instructions don't say that either.

[Atty. Petersen]: These instructions allow that. They allow that to be argued.

[The Court]: First of all, it doesn't matter whether they allow that or not. The jury is not being asked to find that this was E-L's property exclusively.

In fact, the jury is being instructed to the opposite, that both the District and E-L and anybody else in that neighborhood had the right to use that property as long as they used it reasonably.

93

¶ 13. The jury found that the Sewerage District's removal of groundwater from E-L's property was unreasonable, constituted a taking, and caused E-L's building to settle. The jury awarded E-L $309,388 "for the taking of groundwater" beneath its building—an amount equal to the cost to repair E-L's building and the attorney fees E-L incurred litigating with the neighbor who owned the adjacent alley and refused E-L access to make the repairs.

¶ 14. In its November 7, 2007 order, the circuit court denied the Sewerage District's motion for judgment notwithstanding the verdict or, in the alternative, a new trial and granted E-L's request for attorney fees and costs under Wis. Stat. ch. 32.[14]

¶ 15. The Sewerage District appealed, and the court of appeals affirmed, concluding that the jury verdict supported E-L's inverse condemnation claim under Article I, Section 13 of the Wisconsin Constitution and Wis. Stat. ch. 32. *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 2009 WI App 15, ¶ 11, 316 Wis. 2d 280, 763 N.W.2d 231. The court of appeals applied *Wisconsin Power & Light Co. v. Columbia Cnty.*, 3 Wis. 2d 1, 87 N.W.2d 279 (1958), and reasoned that although mere consequential damage to property resulting from government action is not a taking, *E-L Enters.*, 316 Wis. 2d 280, ¶ 9, "the Sewerage District had 'reason to anticipate that damage would result from its acts,' " *id.*, ¶ 10 (quoting *Wis. Power & Light,* 3 Wis. 2d at 7). Accordingly, the court of appeals concluded that "this case is on the 'taking' side of the line recognized by *Wisconsin Power & Light.*" *E-L Enters.*, 316 Wis. 2d 280, ¶ 10.

---

[14] *See supra* note 12.

¶ 16. According to the court of appeals, this case is "most analogous" to this court's decision in *Damkoehler v. City of Milwaukee,* 124 Wis. 144, 101 N.W. 706 (1904), later clarified in *Dahlman v. City of Milwaukee,* 131 Wis. 427, 439–40, 111 N.W. 675 (1907), in which we held that the removal of a building's lateral support by street grading constituted a compensable taking as opposed to consequential damages for which there was no remedy. *E-L Enters.,* 316 Wis. 2d 280, ¶ 9. The court of appeals "[saw] no logical basis to distinguish between the removal of soil providing lateral support and the diversion of groundwater performing essentially the same function." *Id.,* ¶ 11. Because "Wisconsin law already recognizes that a property owner's interest in the integrity of water may give rise to a protectable right," *id.* (citing *State v. Michels Pipeline Constr., Inc.,* 63 Wis. 2d 278, 217 N.W.2d 339 (1974); *Price v. Marinette & Menominee Paper Co.,* 197 Wis. 25, 221 N.W. 381 (1928)), the court of appeals concluded that the Sewerage District's diversion of groundwater from E-L's property constituted a taking. *E-L Enters.,* 316 Wis. 2d 280, ¶ 11.

¶ 17. In concluding that the Sewerage District's conduct constituted an "occupation" under Wis. Stat. § 32.10, *id.,* ¶ 7, the court of appeals explained that "[t]he law in Wisconsin is settled that an entity with the power of condemnation may 'occupy' land without physical entrance onto that land," *id.,* ¶ 8. In particular, the court of appeals cited *Wikel v. Department of Transportation,* 2001 WI App 214, 247 Wis. 2d 626, 635 N.W.2d 213, for the proposition that "there may be a taking when the entity with the power of condemnation does something outside of the affected property that adversely impacts the owner's use of that property." *E-L Enters.,* 316 Wis. 2d 280, ¶ 8.

95

¶ 18.  Finally, the court of appeals concluded that the circuit court did not err in awarding attorney fees and costs to E-L because E-L prevailed on its inverse condemnation claim under Wis. Stat. § 32.10. *Id.*, ¶ 21.

¶ 19.  We now reverse the decision of the court of appeals.

## II. STANDARD OF REVIEW

¶ 20.  Whether government conduct constitutes a taking of private property without just compensation is a question of law that this court reviews de novo. *R.W. Docks & Slips v. State,* 2001 WI 73, ¶ 13, 244 Wis. 2d 497, 628 N.W.2d 781; *Howell Plaza, Inc. v. State Highway Comm'n,* 92 Wis. 2d 74, 80, 284 N.W.2d 887 (1979) (hereinafter *Howell Plaza II*). In addition, whether an inverse condemnation claim has been established under Wis. Stat. § 32.10 involves the interpretation and application of a statute, which presents a question of law that we review de novo while benefiting from the lower courts' analyses. *C. Coakley Relocation Sys. v. City of Milwaukee,* 2008 WI 68, ¶ 14, 310 Wis. 2d 456, 750 N.W.2d 900; *see also Koskey v. Town of Bergen,* 2000 WI App 140, ¶ 4, 237 Wis. 2d 284, 614 N.W.2d 845.

## III.  ANALYSIS

### A.  Takings Claim

¶ 21.  Article I, Section 13 of the Wisconsin Constitution provides: "The property of no person shall be taken for public use without just compensation therefor." Likewise, the Takings Clause of the Fifth Amend-

96

ment of the U.S. Constitution, made applicable to the States through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 536 (2005) (citing *Chicago, Burlington & Quincy R. Co. v. City of Chicago,* 166 U.S. 226 (1897)). In order to trigger the "just compensation" clause under either the Wisconsin Constitution or the U.S. Constitution, there must be a "taking" of private property for public use. *Zinn v. State,* 112 Wis. 2d 417, 424, 334 N.W.2d 67 (1983); *Howell Plaza II,* 92 Wis. 2d at 80.

¶ 22.   Under the Wisconsin Constitution, two types of governmental conduct can constitute a taking: (1) "an actual physical occupation" of private property or (2) a restriction that deprives an owner "of all, or substantially all, of the beneficial use of his property." *Howell Plaza, Inc. v. State Highway Comm'n,* 66 Wis. 2d 720, 726, 226 N.W.2d 185 (1975) (hereinafter *Howell Plaza I*). Similarly, under the U.S. Constitution, governmental conduct gives rise to a takings claim when there is either (1) "direct government appropriation or physical invasion of private property" or (2) government regulation of private property that is "so onerous that its effect is tantamount to a direct appropriation." *Lingle,* 544 U.S. at 537. The latter category, deemed a "regulatory taking," is per se compensable under the Fifth Amendment if the regulation "requires an owner to suffer a permanent physical invasion of her property" or "completely deprives an owner of '*all* economically beneficial us[e]' of her property." *Id.* at 538 (quoting *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1019 (1992)).

¶ 23.   In this case, E-L does not claim that the Sewerage District's conduct constituted a regulatory

97

taking. Rather, E-L claims that the Sewerage District "physically took" E-L's property.[15] E-L's brief asserts that the Sewerage District "physically took E-L's groundwater and deprived E-L of the use of that groundwater, resulting in the diminished value of E-L's property." E-L argues that by pumping groundwater from the trench, thereby extracting the groundwater from beneath E-L's adjacent building, the Sewerage District physically oc-

---

[15] In its brief, E-L "asserts that the [Sewerage] District's taking was a physical, not regulatory, taking." Although E-L asserts that it is not claiming a regulatory taking, E-L's brief contradicts that by likening the Sewerage District's conduct to government regulatory action analyzed in *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419 (1982).

*Loretto* is an example of one of two categories of regulatory action that is deemed a per se taking under the Fifth Amendment. *See Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 538 (2005) (citing *Loretto* as an example of a regulatory taking); *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1015 (1992) (same). In *Loretto,* the United States Supreme Court held that a New York law requiring landlords to permit cable companies to install cable facilities in apartment buildings amounted to a permanent physical invasion of private property and thus required compensation as a matter of law. 458 U.S. 419. A permanent physical invasion of private property, like the installation of cable facilities occupying portions of a property owner's roof, is different than the "classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle,* 544 U.S. at 539. The former is a per se taking that requires just compensation, *id.* at 538, "without regard to the public interests that it may serve," *Loretto,* 458 U.S. at 426; *see also Lucas,* 505 U.S. at 1015 (stating that permanent physical invasions require compensation "no matter how weighty the public purpose behind it").

At oral argument, E-L reiterated that its claim is based on the classic, not regulatory, category of taking: the Sewerage District's actual occupation or direct appropriation of E-L's property.

cupied or directly appropriated E-L's groundwater for the construction of the sewer. The removal of the groundwater damaged the building's wood piles, causing the building to settle and reducing the value of E-L's property. Because the groundwater was appropriated in connection with the installation of the sewer, which was created for the public's use and benefit, E-L claims that it is entitled to just compensation under both the Wisconsin Constitution and the U.S. Constitution.

■

¶ 24. E-L's takings claim must fail. E-L's claim morphed from a complaint that the Sewerage District "physically took portions of the wood piles which rendered them unusable and damaged the E-L Building" into a special verdict form that asked the jury to determine the sum of money that would "justly compensate E-L for the taking of [the] groundwater." The groundwater was indeed that which was extracted by the Sewerage District, but E-L introduced no proof as to the value of the extracted groundwater. Therefore, whether E-L owns the extracted groundwater is inapposite in this case.[16] E-L instead seeks damages for the cost to repair its building and for the loss of use of its wood piles. However, the Sewerage District did not physically occupy the property for which E-L seeks compensation, and no government-imposed restriction deprived E-L of all, or substantially all, of the beneficial use of its property. What remains are mere consequential damages to property resulting from governmental action, which are not compensable under Article I, Section 13 of the Wisconsin Constitution or the Takings Clause of the Fifth Amendment.

---

[16] While we recognize the significance of this issue, it is our position that its resolution is better reserved for a future case.

### 1. Whether E-L owns the extracted groundwater is inapposite in this case.

¶ 25.  To determine whether a taking occurred, E-L argues that "the first question that must be addressed is whether property owners have a property right in groundwater." As E-L correctly points out, there can be no takings claim if that which the Sewerage District allegedly took is not E-L's property. However, E-L introduced no proof as to the value of the extracted groundwater. Instead, E-L seeks damages that flow from the allegation that when the Sewerage District pumped groundwater from the trench, the groundwater level beneath E-L's building was lowered, causing the wood piles to dry out and the building to settle. E-L's opening and closing arguments at trial make clear that instead of seeking damages for the value of the extracted groundwater, E-L seeks damages for the cost to repair the wood piles and E-L's building.

¶ 26.  In its opening argument, E-L claimed that the Sewerage District took E-L's groundwater but consistently spoke of damage to E-L's wood piles and building:

> [The Sewerage District] knew that its partial taking of the property, taking of groundwater would result in a lower value of E-L's building. You take the groundwater, the piles rot, your building sinks, your building is not worth what it was.
>
> . . . .
>
> As a result of [the Sewerage District] taking groundwater, E-L's property lost value, the entire property. We believe the value of the building lost the value equal to the amount of the repairs that had to be done.
>
> If I'm going to sell a house and you think it's worth $400,000, and I know the roof needs to be repaired for

$30,000, somebody buying that is going to say, no, it's not $400,000, it's worth 370.

They're going to take out the value. And that's what E-L contends is the amount taken. The loss in the value of their property. And the amount that we're seeking on that is just the amount E-L paid out of pocket.

. . . .

Everything we show you at trial is for you to see why E-L should be compensated for the taking of the groundwater by [the Sewerage District]. And how much money will equal the value of the groundwater taken by [the Sewerage District] and the harm caused to E-L from the damage to its piles.

¶ 27.   Similarly, in its closing argument, E-L reiterated to the jury that E-L was seeking damages for the cost to repair its building:

The next question [on the special verdict form] asks what amount should E-L be paid for its just compensation. And here's where we're going on this.

. . . .

. . . The reduction in the fair market value was what were the repairs that had to be done on this place.

And the repairs that had to be done are summarized in Exhibit 51[17] for you. There's multiple exhibits that have all the invoices, but if you look at Exhibit 51, you're going to find a summary.

---

[17] E-L's repeated reference to Exhibit 51 as a summary of its damages makes it readily apparent that E-L seeks damages for the cost to repair its building, as opposed to the value of the extracted groundwater. Exhibit 51, a five-page document titled "Costs to Repair the Valley Business Center [or E-L's building]," is a comprehensive list of the repairs made to E-L's building and the costs thereof. The document has a "Detail" list of the repairs made, which includes "Window work," "Foundation, Interior . . . ,"

. . . .

. . . The number we're asking for when you add up all the number [sic] for the 2003 work, the 2004 work, and the attorney fees, we had to fight, you know, we had an easement that was a very standard easement.[18]

We had an [sic] to get permission to go underneath and dig under that building. . . .

. . . .

So, ladies and gentlemen, when you add to the 2,300 from Dahlman, the 2003 expenses, the 2004, and legal fees, the number I come to is 309,388, and that's what I'm going to ask that you find as compensation for the amount of the taking.

¶ 28. It is clear from E-L's opening and closing arguments that instead of seeking damages for the value of the extracted groundwater, E-L seeks damages for the cost to repair the wood piles and E-L's building.

¶ 29. Because E-L introduced no proof as to the value of the extracted groundwater, the court of appeals' reliance on *Dahlman* is misplaced.[19] It is true, as noted

---

"Installed baseboard, etc.," "Electrical work for wall," "Wall repairs," "Demo piping, etc.," and like repairs.

[18] The circuit court instructed the jury that it was permitted to award E-L, as part of its just compensation, the attorney fees that E-L incurred in litigation with the neighbor who owned the adjacent alley and refused E-L access to make the building repairs. We conclude that the circuit court's instruction was improper. As the circuit court and the court of appeals correctly noted, under negligence law, when the defendant's wrongful acts caused the plaintiff to expend legal fees with another party, the expenditure is recoverable against the defendant. *See Weinhagen v. Hayes,* 179 Wis. 62, 65, 190 N.W. 1002 (1922). However, in this case, the Sewerage District is not liable in negligence.

[19] E-L also relies on *Dahlman v. City of Milwaukee,* 131 Wis. 427, 111 N.W. 675 (1907), but not for the same proposition as the

by the court of appeals, *E-L Enters.*, 316 Wis. 2d 280, ¶ 9, that in *Dahlman,* this court held that the removal of a building's lateral support by street grading consti tuted a compensable taking. 131 Wis. at 436–40. There is a significant distinction, however, between *Dahlman* and this case. In *Dahlman,* we concluded that even though the subsidence of the soil caused no deprecia tion in the value of the property owners' premises, the

court of appeals did. E-L relies on *Dahlman* as Wisconsin Supreme Court precedent that "allows the recovery of property losses accompanying a taking of private property where there are foreseeable but unintended consequences." To that end, E-L also relies on *Price v. Marinette & Menominee Paper Co.,* 197 Wis. 25, 221 N.W. 381 (1928). Similarly, in its order denying the Sewerage District's motion for judgment notwithstanding the verdict, the circuit court cited *Dahlman* and *Price,* stating that "at least twice the supreme court has found a taking in circumstances in which the plaintiff's property losses although foreseeable were nonethe less unintended."

We reject E-L's and the circuit court's characterization of *Dahlman* and *Price.* In *Dahlman,* this court concluded that because a property owner, as against the city, is entitled to the lateral support of the soil underlying the owner's property, there was a taking of the soil when the city removed the lateral support in the course of street grading. 131 Wis. at 439–40. Our conclu sion that the city's actions constituted a taking hinged on the property owner's right to the lateral support of the soil, *id.,* not on the foreseeability of the property loss. Likewise, in *Price,* this court held that the plaintiff established a claim under the then-existing inverse condemnation statute when the construc tion and maintenance of dams across the Menominee River caused the river to overflow onto the plaintiff's land, moistening the soil to the point of destroying the land's agricultural value. 197 Wis. at 26, 28. In that case, our conclusion that the plaintiff stated a takings claim centered on the plaintiff's allegation that the flood waters physically invaded the plaintiff's property and entirely destroyed its value, *id.;* again, the foreseeability of the property loss played no part in the analysis.

103

property owners were still entitled to recover nominal damages for the value of the property taken for public use, which in that case, was soil. *Id.* In this case, E-L introduced no proof as to the value of the extracted groundwater. Instead, E-L seeks damages for the cost to repair its building and for the loss of use of the wood piles. Because E-L introduced no proof as to the value of the extracted groundwater, we need not decide today whether E-L owns the groundwater. Accordingly, the issue of whether a landowner owns the groundwater beneath his property is not before us today.[20]

---

[20] While we take no position on the issue of whether a landowner owns the groundwater beneath his property, we nevertheless determine that the circuit court erred by instructing the jury that "[g]roundwater is considered property of the person who owns the land under which it flows." Contrary to the circuit court's contention, the jury instruction is not consistent with *Michels Pipeline,* 63 Wis. 2d 278. In that case, the State claimed that the defendants (the Sewerage District, Michels Pipeline Construction, and Milwaukee County) created a public nuisance by pumping water from wells in order to sufficiently dewater the soil to permit tunneling for construction of a sewer. *Id.* at 281–82. According to the complaint, citizens "were caused great hardship by the drying up of wells, decreasing capacity and water quality in others, and by the cracking of foundations, basement walls and driveways, due to subsidence of the soil." *Id.* at 282. Concluding that the complaint stated facts sufficient to constitute a cause of action in tort, this court adopted section 858A of the Restatement (Second) of Torts, providing that a landowner may not withdraw groundwater in a manner that causes unreasonable harm to another's property. *Id.* at 302–03.

Our holding in *Michels Pipeline* recognized that while a landowner is permitted to withdraw groundwater for a beneficial purpose, he or she may be liable in tort for excessively withdrawing groundwater to the detriment of another's property. The circuit court dismissed E-L's negligence and nuisance claims

## 2. Mere consequential damage to property resulting from governmental action is not a taking thereof.

■■

¶ 30. Both the United States Supreme Court and this court have consistently recognized that "govern ment action outside the owner's property that causes consequential damages within" does not constitute a taking. *Loretto v. Teleprompter Manhattan CATV Corp.,*

---

against the Sewerage District on the basis of governmental immunity. As we previously noted, *supra* note 10, E-L did not appeal the dismissal of those tort claims.

Despite the dismissal of E-L's negligence and nuisance claims against the Sewerage District, the jury was nevertheless asked to determine if the Sewerage District's removal of groundwater from E-L's property was "unreasonable." As we have just explained, the withdrawal of groundwater in a manner that causes unreasonable harm to another's property may give rise to a tort claim. Because the circuit court dismissed the tort claims against the Sewerage District, the jury should not have been asked to evaluate the reasonableness of the groundwater removal.

Likewise, the jury was erroneously asked to determine whether the Sewerage District's removal of groundwater from E-L's property was a taking. Whether government conduct constitutes a taking of private property without just compensation is a question of law. *R.W. Docks & Slips v. State,* 2001 WI 73, ¶ 13, 244 Wis. 2d 497, 628 N.W.2d 781. While a jury may properly be asked to determine questions of fact pertinent to a takings claim, e.g., the amount of damages that will justly compensate a property owner for a taking, *see Stelpflug v. Town Bd., Town of Waukesha, Cnty. of Waukesha,* 2000 WI 81, ¶ 26, 236 Wis. 2d 275, 612 N.W.2d 700, the ultimate determination of whether government conduct constitutes a taking is a question of law that is not properly placed before a jury.

In this case, the special verdict form, which questioned the jury as to reasonableness and causation, was framed in terms of a negligence claim rather than a takings claim.

458 U.S. 419, 428 (1982); *see also Howell Plaza II,* 92 Wis. 2d at 80; *Howell Plaza I,* 66 Wis. 2d at 725; *Wis. Power & Light,* 3 Wis. 2d at 6. "Sec. 13, art. I, like its equivalent in the federal constitution, 'does not undertake, . . . to socialize all losses, but only those which result from a taking of property.' " *Id.* (quoting *United States v. Willow River Power Co.,* 324 U.S. 499, 502 (1945)). As we pointed out previously, the U.S. Constitution and the Wisconsin Constitution, unlike the constitutions of other states,[21] provide only that the property of no person shall be "taken" for public use without just compensation; there is no mention of just compensation for property that is merely "damaged" for public use. *Howell Plaza II,* 92 Wis. 2d at 81; *Howell Plaza I,* 66 Wis. 2d at 726; Wis. Power & Light, 3 Wis. 2d at 6. Therefore, "in the absence of a physical invasion which ousts the owner from full or partial possession or a total deprivation of beneficial use, mere damage to property (or property value) does not constitute a taking." 2A Julius L. Sackman, *Nichols on Eminent Domain* § 6.01[11], at 6–19 (3d ed. 2009).

¶ 31.   In *Wisconsin Power & Light,* this court recognized that under the Wisconsin Constitution and the U.S. Constitution, "mere consequential damage to property resulting from government action is not a taking thereof." 3 Wis. 2d at 6. In that case, a utility company alleged a takings claim against Columbia County. *Id.* at 4. In the process of building a road, the county deposited sand and gravel in a swamp adjacent to the utility

[21] For example, Article I, Section 15 of the Illinois Constitution provides: "Private property shall not be taken *or damaged* for public use without just compensation as provided by law." (Emphasis added.) For a list of other states with similar constitutional provisions, *see* 2A Julius L. Sackman, *Nichols on Eminent Domain* § 6.01[11], at 6–22 n.52 (3d ed. 2009).

company's electrical power line and close to one of its towers. *Id.* at 3. The sand and gravel extended under the surface of the swamp, "displacing the muck and peat so as to create mounds of earth eight to 10 feet high above the surface of the swamp under the power line and to move [the utility company's] tower horizontally and tilt it." *Id.* As a result, the tower was twisted and bent and had to be replaced. *Id.*

¶ 32.   Like E-L's damaged building and wood piles in this case, the damaged tower "was not taken for public use in the usual sense of those words." *Id.* at 4. Just as E-L's building and wood piles were not used in connection with the sewer installation, the tower in *Wisconsin Power & Light* was not used in connection with the county's highway project. *Id.* Rather, the tower "was merely damaged by accident" as a result of the highway project. *Id.* Because the issue was one of "only damage, without appropriation to the public purpose," *id.* at 6, this court concluded that the utility company was unable to recover its damages on the theory of a constitutional taking for public use, *id.* at 7.[22]

---

[22] To reach its conclusion that the county's conduct did not constitute a taking, this court gave weight to the following facts:

> [T]he tower had no utility, direct or indirect, to the highway project, that the county did not need or desire the tower or the land on which it rested and did not intend to acquire or affect either the tower or the land, that the public obtained no benefit from injuring it, that the county had no reason to anticipate that damage would result from its acts, and that the injury to the tower was purely accidental.

*Wis. Power & Light*, 3 Wis. 2d at 7.

Here, the court of appeals erroneously distinguished those facts from the facts in this case to conclude that the Sewerage District's conduct "is on the 'taking' side of the line recognized by

¶ 33.   Similarly, in this case, we conclude that the damages E-L suffered are mere consequential damages to property resulting from governmental action, which are not compensable under Article I, Section 13 of the Wisconsin Constitution or the Takings Clause of the Fifth Amendment. E-L seeks damages for the cost to repair its building and the loss of use of the wood piles.

*Wisconsin Power & Light." E-L Enters.*, 316 Wis. 2d 280, ¶ 10. The court of appeals first reasoned that "unlike the situation in *Wisconsin Power & Light,* the Sewerage District had 'reason to anticipate that damage would result from its acts.' " *Id.* Specifically, evidence "indicated that the Sewerage District was aware of a potential groundwater problem in connection with buildings near the project and, indeed, had directed its contractor to be careful to avoid damage to those buildings as the result of 'removal or disturbance of groundwater . . . .' " *Id.* The court of appeals further reasoned that "unlike the situation in *Wisconsin Power & Light,* where 'the public obtained no benefit from injuring' the tower, . . . draining the groundwater facilitated the Sewerage District's construction" and therefore had utility to the sewer project. *Id.*

The court of appeals' reasoning is flawed in two respects. First, the fact that this court recognized in *Wisconsin Power & Light* that "the county had no reason to anticipate that damage would result from its acts," 3 Wis. 2d at 7, does not establish that foreseeability of damages supports a takings claim. To the contrary, we expressly declined to place significance on any of the *Wisconsin Power & Light* facts standing alone. *Id.* Rather, we concluded that the facts "collectively" negated a taking in the constitutional sense. *Id.* Second, the court of appeals' distinction between this case and *Wisconsin Power & Light* presupposes that E-L is seeking damages for the extracted groundwater. As we pointed out previously, E-L is seeking damages for the cost to repair its building and the loss of use of its wood piles. Accordingly, the issue here is not whether the public obtained a benefit from the draining of the groundwater but instead whether the public obtained a benefit from the damaged wood piles. The public did not.

However, the Sewerage District did not physically occupy E-L's building or wood piles. The Sewerage District did not use the building or wood piles in connection with the sewer installation, and the public obtained no benefit from the damaged building or wood piles. Rather, the wood piles were damaged as a result of the Sewerage District's alleged negligent construction of the sewer. Accordingly, we have in this case "only damage, without appropriation to the public purpose." *Id.* at 6. Such damage is not recoverable in a takings claim but instead sounds in tort. The circuit court already dismissed E-L's tort claims against the Sewerage District on the grounds of governmental immunity under Wis. Stat. § 893.80(4).[23]

¶ 34. The court of appeals relied upon our decision in *Damkoehler* for authority that the Sewerage District's diversion of groundwater that supported the structural integrity of E-L's building constituted a compensable taking, as opposed to mere consequential damage to property for which there is no remedy. *See E-L Enters.,* 316 Wis. 2d 280, ¶¶ 9, 11. In *Damkoehler,* this court recognized that a landowner has the right to have her property protected against an excavation that causes her property to subside. 124 Wis. at 151. In that case, for purposes of improving the highway, the city of Milwaukee excavated a street adjacent to the plaintiff's property and caused "a considerable part of her land to subside and fall into the street." *Id.* at 150. We held that the city's actions, in removing the lateral support of the soil of the plaintiff's property, amounted to a compensable taking.

---

[23] Still, E-L is not without a remedy for the damage to its building caused by the alleged negligent construction of the sewer. Subject to the parties' confidential agreement, E-L has already been compensated an undisclosed amount by CNA, the insurer for the now defunct contractor.

*Id.* at 150–51. In so holding, we distinguished the underlying case from our holding in *Alexander v. City of Milwaukee,* 16 Wis. 247 (1862), in which we concluded that the damages to the plaintiff's property caused by the city's harbor improvements were consequential to the public improvement and were not recoverable from the city. *Damkoehler,* 124 Wis. at 150. We concluded that the *Damkoehler* facts fell within an exception to the general rule that consequential damage to property resulting from governmental action is not a taking thereof:

> [T]he court [in *Alexander*] expressly declare[d] that it [did] not wish 'to be understood as asserting the doctrine that there must be an actual taking or appropriation of the property itself in order to entitle the owner to compensation for damages done him. The city might so build a bridge, or open a street, or excavate a canal along or upon a lot, only appropriating a small amount of it, *or perhaps none of the land itself, and yet entirely destroy the value of the property for all purposes.' The instant case, in its facts, comes within the exception so distinguished by the court,* and cannot be held to be ruled by the decision of that case.

*Id.* (quoting *Alexander,* 16 Wis. at 253) (emphasis added). Accordingly, in *Damkoehler,* the city's actions amounted to a compensable taking because the city, by removing the lateral support of the soil of the plaintiff's property, caused a substantial part of the plaintiff's land to subside and fall and " 'entirely destroy[ed] the value of the property for all purposes.' " *Id.* at 150 (quoting *Alexander,* 16 Wis. at 253).

¶ 35. The distinction between *Damkoehler* and this case is significant. In this case, E-L does not claim that by diverting the groundwater beneath E-L's building and thereby reducing the building's structural integrity, the Sewerage District deprived E-L of all, or

110

substantially all, of the beneficial use of its building. Nor can E-L so claim. The fact that E-L continued to lease the building throughout this entire period is alone sufficient to show that the value of E-L's building was not destroyed for all purposes. Therefore, this case does not fall under the *Damkoehler* exception to the well-recognized rule that mere consequential damage to property resulting from governmental action is not a taking thereof.

## B. Inverse Condemnation Claim

■■■

¶ 36.   Wisconsin Stat. § 32.10 is based on Article I, Section 13 of the Wisconsin Constitution and "is the legislative direction as to how the mandate of the just compensation clause is to be fulfilled." *Zinn,* 112 Wis. 2d at 433. "[A] landowner, who believes that his or her property has been taken by the government without instituting formal condemnation proceedings," may bring an inverse condemnation claim under § 32.10 to recover just compensation for the taking. *Id.* at 432–33 (recognizing that Wis. Stat. ch. 32 sets out the procedure the government must follow in acquiring private property for public use, and § 32.10 provides a remedy for when the government takes property without first condemning it and paying just compensation under ch. 32). Wisconsin Stat. § 32.10 provides in relevant part:

> *If any property has been occupied* by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. . . . The court shall make *a finding of whether*

111

*the defendant is occupying property of the plaintiff* without having the right to do so. If the court determines that the defendant is occupying such property of the plaintiff without having the right to do so, it shall treat the matter in accordance with the provisions of this subchapter . . . assuming the plaintiff is not questioning *the right of the defendant to condemn the property so occupied.*

(Emphasis added.) By its terms, § 32.10 "is designed solely to deal with the traditional exercise of eminent domain by the government: the government has occupied private property, plans to continue such occupation and the landowner is merely requesting just payment for this land." *Zinn,* 112 Wis. 2d at 433.

¶ 37. To state a cause of action under Wis. Stat. § 32.10 in the absence of actual possession or occupation, this court concluded in *Howell Plaza I* that the facts alleged must "show that the property owner has been deprived of all, or practically all, of the beneficial use of his property or of any part thereof." 66 Wis. 2d at 730. We later clarified that holding in *Howell Plaza II,* concluding that short of actual occupation, there must be a legal restraint by the condemning authority that deprives the owner of all, or substantially all, of the beneficial use of his property. 92 Wis. 2d at 81–82, 87–89 (affirming circuit court's judgment in favor of the State Highway Commission in the property owner's inverse condemnation action under Wis. Stat. § 32.10 because if the property owner "was in fact unable to develop its property, it was not due to any restriction imposed upon it by the commission"). Therefore, under this court's jurisprudence, in order to state a claim of inverse condemnation under § 32.10, the facts alleged must show either that there was an actual physical occupation by the condemn-

112

ing authority or that a government-imposed restriction deprived the owner of all, or substantially all, of the beneficial use of his property.

¶ 38. Still, when a property owner alleges a constitutional taking, the remedy provided by Wis. Stat. § 32.10 is not necessary to enforce the right to just compensation. *Zinn,* 112 Wis. 2d at 438. The property owner has stated a claim based directly on Article I, Section 13 of the Wisconsin Constitution. *Id.*

¶ 39. In this case, E-L has failed to establish an inverse condemnation claim under Wis. Stat. § 32.10. It is undisputed that the Sewerage District did not physically occupy the property for which E-L seeks compensation, its building or the wood piles, and no government-imposed restriction deprived E-L of all, or substantially all, of the beneficial use of its property.[24] Therefore, the remedy provided in § 32.10 is simply inapplicable.

---

[24] In concluding that the Sewerage District's conduct constituted an "occupation" under Wis. Stat. § 32.10, the court of appeals explained that "[t]he law in Wisconsin is settled that an entity with the power of condemnation may 'occupy' land without physical entrance onto that land." *E-L Enters.,* 316 Wis. 2d 280, ¶ 8. In particular, the court of appeals cited *Wikel v. Department of Transportation,* 2001 WI App 214, 247 Wis. 2d 626, 635 N.W.2d 213, for the proposition that "there may be a taking when the entity with the power of condemnation does something outside of the affected property that adversely impacts the owner's use of that property." *E-L Enters.,* 316 Wis. 2d 280, ¶ 8.

In *Wikel,* the court of appeals reversed the circuit court's order dismissing the plaintiff's petition for inverse condemnation under Wis. Stat. § 32.10. 247 Wis. 2d 626, ¶ 1. The Wisconsin Department of Transportation (DOT) condemned a five-foot strip of plaintiff's land for the purpose of constructing a retaining wall to prevent groundwater from entering a new highway. *Id.,* ¶ 3. The plaintiff accepted $4,000 from the DOT as just compen-

¶ 40. Because E-L has failed to establish an inverse condemnation claim under Wis. Stat. § 32.10, E-L is not entitled to its attorney fees and costs under Wis. Stat. § 32.28(3).

## IV. CONCLUSION

¶ 41. In summary, we need not decide today the panoply of issues that relate to an alleged taking of groundwater. In this case, E-L introduced no proof as to

---

sation for the acquisition of that strip of her property. *Id.* However, according to the plaintiff's petition, in connection with the construction of the retaining wall, the DOT caused structural damage to her residence, rendering her property valueless. *Id.*, ¶ 4.

As the court of appeals recognized, " 'Land may be taken for public purposes, within the meaning of the constitutional provision, without actual occupancy or seizure by the taker.' " *Id.*, ¶ 12 (citing *Wis. Power & Light,* 3 Wis. 2d at 4; *Eberle v. Dane Cnty. Bd. of Adjustment,* 227 Wis. 2d 609, 621, 595 N.W.2d 730 (1999)). The court of appeals rejected the DOT's argument that the plaintiff's petition was insufficient because it failed to establish either that the government occupied the alleged damaged property or that the property was valueless. *Wikel,* 247 Wis. 2d 626, ¶ 11. The plaintiff was "entitled to the opportunity to prove her allegation that the [DOT's] actions rendered her property 'uninhabitable and unsaleable' and therefore, constituted a 'total, permanent taking.' " *Id.*, ¶ 17.

*Wikel* is readily distinguishable from this case. In *Wikel,* the plaintiff claimed that the DOT's construction of the retaining wall rendered her property "uninhabitable and unsaleable" and therefore constituted a "total, permanent taking." *Id.*, ¶ 4. As discussed *supra* Part III.A.2, in this case, E-L does not claim that the Sewerage District's diversion of groundwater beneath E-L's building, which reduced the building's structural integrity, rendered E-L's building valueless. E-L cannot so claim because it is undisputed that E-L continued to lease the building throughout this entire period.

114

the value of the extracted groundwater. Instead, E-L seeks damages for the cost to repair its building and for the loss of use of its wood piles. The Sewerage District did not physically occupy the property for which E-L seeks compensation, and no government-imposed restriction deprived E-L of all, or substantially all, of the beneficial use of its property. Accordingly, what remains are mere consequential damages to property resulting from governmental action, which are not compensable under constitutional takings law. The damage to E-L's building was caused by the alleged negligent construction of the sewer; hence, E-L's claim sounds in tort and seeks damages for which the Sewerage District is not liable under the doctrine of governmental immunity. For the same reasons, we further conclude that E-L has failed to establish an inverse condemnation claim under Wis. Stat. § 32.10. E-L is therefore not entitled to attorney fees and costs under Wis. Stat. ch. 32. Accordingly, this court reverses the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 42. ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority that mere consequential damage to property resulting from government action is not a taking. Majority op., ¶ 24. I also agree with the majority that the essence of this case sounds in tort. *Id.*, ¶ 5. Given the circuit court's conclusion that the District is immune from tort liability, I conclude that the District is not liable for these damages to E-L's property.

¶ 43. Over three decades ago, this court established that a property owner's remedy for unreasonable interference with its use of groundwater sounds in tort. *State v. Michels Pipeline Constr., Inc.*, 63 Wis. 2d 278, 217 N.W.2d 339 (1974). The *Michels Pipeline* court adopted the portion of the then-existing draft of the Restatement

115

(Second) Torts which addressed liability for use of groundwater. In relevant part, that section provided:

> A possessor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another, unless
>
> (a) The withdrawal of water causes unreasonable harm through lowering the water table or reducing artesian pressure . . . .

Restatement (Second) Torts, Tentative Draft No. 17, April 26, 1971, § 858A.[1]

¶ 44. Under the circumstances presented here, the withdrawal of groundwater may have caused unreasonable harm to E-L. But the remedy for this wrong sounds not in takings, but in tort.[2]

¶ 45. Indeed, as this case was presented to the jury, E-L's "takings" claim strongly resembled a tort claim. E-L argued that the District should have foreseen the harm and could have taken measures to avoid it. Additionally, E-L sought as damages the amount of money that it lost in rent and the amount of money that it paid out of pocket to repair the building.[3]

---

[1] This section was modified slightly before it was approved by the American Law Institute in 1979 as Restatement (Second) Torts § 858.

[2] In addition to filing tort and takings claims against the District, E-L also filed tort claims against the insurance company that insured BCI/TCI, the now-defunct subcontractor that constructed the tunnel. E-L and BCI/TCI settled the dispute for an undisclosed sum of money. Based on this record, it is unclear whether E-L has already been compensated in whole, or in part, for the cost of repairing its building.

[3] At closing arguments, E-L's attorney explained: "And the cost to E-L in the District's use of that groundwater . . . it's

¶ 46. Further, portions of the jury instructions and special verdict also resembled a tort inquiry. For instance, the jury was instructed to determine whether the District's use of groundwater was unreasonable:

> The burden is on E-L to satisfy you by the greater weight of the credible evidence, to a reasonable certainty, that the District's use of E-L's groundwater was unreasonable. In determining whether the District's use of E-L's groundwater was unreasonable, you should consider the District's need for the groundwater, E-L's need for the groundwater, the cost to E-L, if any, of the District's use of the groundwater, the cost to the District, if any, of not using the groundwater or of replacing the groundwater and whether the District's purposes for using E-L's groundwater could have been achieved through other means.

The reasonableness or unreasonableness of the District's actions is not a takings question—it is a tort question.

¶ 47. The circuit court determined that the District is immune from tort liability. E-L's attempt to dress up its tort claim in takings clothes to circumvent the District's immunity is unavailing. Accordingly, I respectfully concur.

---

roughly $309,000 is what it's cost E-L, plus loss of rent, what it's cost E-L because of the removal of the groundwater outside the trench by the District."

When there has been a partial taking, compensation is typically measured as either (1) the fair market value of the portion of the property that was taken; or (2) "severance damages," measured as the difference between the fair market value of the property before the taking and the fair market value of the remaining parcel after the taking. Russell M. Ware, The Law of Damages in Wisconsin § 19.12 (5th ed. 2010); *Arents v. ANR Pipeline Co.*, 2005 WI App 61, ¶ 14, 281 Wis. 2d 173, 696 N.W.2d 194.

¶ 48. DAVID T. PROSSER, J. (*dissenting*). At trial, a jury found that E-L Enterprises, Inc. (E-L) suffered $309,388 in damages caused by the Metropolitan Milwaukee Sewerage District (MMSD). The majority does not dispute the accuracy of these findings. Rather, it concludes that E-L may not collect the damages awarded because they are "consequential damages" that are not available to an injured party under Wisconsin takings law.

¶ 49. Put in context, this ruling not only overturns a reasonable jury verdict but also deprives E-L of any meaningful remedy for its injury. This case, then, is important beyond the specific issues decided. It exposes the chasm between government wrongdoing and citizen redress. For the reasons stated below, I respectfully dissent.

I

¶ 50. In the 1980s, MMSD undertook construction of deep tunnels to hold sewage until it can be treated, thereby reducing water pollution. As part of this project, MMSD constructed the Cross Town 7 Collector System (CT-7) tunnel, which was located next to E-L's property. Before construction, MMSD detected the presence of groundwater in the vicinity. To construct the tunnel, project managers deemed it necessary to remove groundwater from the trench that would house the tunnel.

¶ 51. In the process of removing groundwater from the soil around the tunnel, MMSD also removed groundwater from E-L's property. The loss of groundwater caused 14 wood piles that were supporting E-L's building to rot. The jury determined that $309,388 was just compensation for E-L's costs to repair the piles.

¶ 52. On June 23, 2004, after repairing the piles, E-L filed suit against MMSD and CNA Insurance Companies, the insurers for the private contractors that participated in the construction of the deep tunnel project. E-L's complaint alleged five causes of action: (1) negligence against MMSD; (2) continuing nuisance against MMSD; (3) inverse condemnation;[1] (4) negligence against CNA; and (5) continuing nuisance against CNA. E-L settled with CNA prior to the trial of the case.

¶ 53. E-L did not enumerate five causes of action to increase its damages. E-L pled five causes of action because it was confronted with the challenge of grounding its claim for recovery in traditional legal theory. Because the facts of the case were unusual, the appropriate theory for the case was uncertain.

¶ 54. In its complaint, E-L presented its inverse condemnation claim as follows:

> 51. MMSD's operation and maintenance of the Deep Tunnel and the 48 inch sewer pipes which were constructed as a part of the Cross Town 7 Collector System *physically took portions of the wood piles* which rendered them unusable and damaged the E-L Building.
>
> 52. MMSD's conduct constitutes a taking of E-L Enterprises' property for public use. Specifically, MMSD's conduct constitutes a *physical invasion* that

---

[1] "Inverse condemnation" describes "*a cause of action against a governmental defendant* to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *U.S. v. Clarke,* 445 U.S. 253, 257 (1980) (quoting D. Hagman, *Urban Planning & Land Development Control Law* 328 (1971)).

119

deprived and continues to deprive E-L Enterprises of all beneficial use of the wood piles in violation of the Fifth Amendment of the United States Constitution and Article I, Section 13 of the Wisconsin Constitution.

(Emphasis added.)

¶ 55. By the time the case went to the jury, E-L had shifted the theory of its takings claim: MMSD did not "take" E-L's wood piles; MMSD "took" E-L's groundwater, thereby causing damage. The jury ultimately answered "yes" to the verdict question: "Was the District's removal of groundwater from E-L's property a taking?"

II

¶ 56. E-L also claimed negligence and nuisance. Both of these claims were dismissed by the circuit court. Initially, in March of 2006, the circuit court refused to dismiss these claims on grounds of governmental immunity. At the summary judgment stage, MMSD argued that its acts were "discretionary," not "ministerial," and therefore it was immune from liability. E-L, on the other hand, pointed to DNR-approved and –mandated groundwater depletion specifications, which prohibited MMSD and its contractors from lowering groundwater below existing levels.

¶ 57. Based on E-L's argument, the circuit court initially concluded that "the act for which E-L seeks to hold MMSD liable—exceeding the groundwater depletion limitation—constitutes a transgression in which MMSD had no discretion to engage." Relying on *Lister v. Board of Regents of the University of Wisconsin System*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976), the court concluded that "nothing remain[ed] for judgment or discretion." The court, therefore, denied MMSD's summary judgment motion.

¶ 58. In February of 2007, nearly one year after denying MMSD's motion for summary judgment and six months before the case proceeded to trial, the court revisited its earlier decision. In the course of deciding other motions, the court acknowledged a different provision in the same DNR-approved and –mandated specification. This provision required the contractor to control groundwater to perform work in the trenches in the dry, and to remove water when concrete is being placed and pipe is being laid. The circuit court concluded that "[d]iscretion is conferred [by the specification] because MMSD must exercise some judgment on how to obey both the duty to keep the excavation dry and safe as well as its duty not to draw the water down too low." Acknowledging that it made this ruling "relatively late in the game," the court dismissed both the negligence and nuisance claims. As a result, the parties proceeded to trial on the inverse condemnation claim alone.

¶ 59. Query: Isn't the natural remedy for the wrong in this case to be found in the law of negligence? Not if the court persists in unreasonably broad notions of governmental immunity and unreasonably narrow exceptions for tort recovery.[2] In any event, because the jury awarded E-L damages under a different legal theory from negligence, questions about governmental immunity were not raised in the petition for review, and the case before us involves only questions pertaining to the inverse condemnation claim.

## III

¶ 60. In the absence of an adequate remedy in tort law, the only remedy available to E-L comes from the

---

[2] *See Umansky v. ABC Ins. Co.,* 2009 WI 82, ¶¶ 37–81, 319 Wis. 2d 622, 769 N.W.2d 1 (Prosser, J., concurring).

Takings Clauses of the United States and Wisconsin Constitutions.[3] Yet the majority rejects E-L's takings claim, reasoning that, even if the removal of E-L's groundwater was a taking, the damages E-L seeks are consequential damages, which are unavailable under takings law. In my view, this analysis interprets the scope of damages under takings law too narrowly.

¶ 61.   In *Luber v. Milwaukee County,* 47 Wis. 2d 271, 276, 177 N.W.2d 380 (1970), this court rejected the argument that consequential damages arising from a taking were "to be suffered in legal silence." The court noted that the rule against consequential damages in eminent-domain cases had been attacked on the grounds that the rule ignores the "economic implications of the situation." *Id.* at 279 (quoting Frank A. Aloi & Arthur Abba Goldberg, *A Reexamination of Value, Good Will, and Business Losses in Eminent Domain,* 53 Cornell L. Rev. 604, 631 (1968)). The court held:

> The importance of allowing recovery for incidental losses has increased significantly since condemnation powers were initially exercised in this country. During the early use of such power, land was usually undeveloped and takings seldom created incidental losses. Thus the former interpretation of the 'just compensation' provision of our constitution seldom resulted in the infliction of incidental losses. The rule allowing fair market value for only the physical property actually taken created no great hardship. In modern society, however, condemnation proceedings are necessitated

---

[3] *See* U.S. Const. amend. V ("[N]or shall private property be taken for public use without just compensation"); Wis. Const. art. 1, § 13 ("The property of no person shall be taken for public use without just compensation therefor."). The majority decides that E-L's damages are not compensable under both the United States and Wisconsin Constitutions. Majority op., ¶ 24.

by numerous needs of society and are initiated by numerous authorized bodies. Due to the fact people are often congregated in given areas and that we have reached a state wherein *re*-development is necessary, commercial and industrial property is often taken in condemnation proceedings. When such property is taken, incidental damages are very apt to occur and in some cases exceed the fair market value of the actual physical property taken.

*Id.* at 279–80.

¶ 62.   In this case, although E-L seeks recovery for damages beyond the value of the groundwater, it does not go so far as to seek the kinds of consequential damages sought in *Luber. Luber* dealt with consequential damages beyond the reduction in "fair market value" of the property—the landowner sought lost rent. In this case, however, the jury awarded E-L the reduction in fair market value of its property. The circuit court instructed the jury:

> If the government takes private property for a public use, the government must pay the owner the fair market value of the property that is taken. If only part of an owner's property is taken, and if taking part of the property reduces the value of the property that remains, the government must pay the difference between the fair market value of the property before the taking and the fair market value of the property after the taking.

¶ 63.   Based on this instruction, the jury determined that E-L should be compensated in the amount of $309,388. Even though E-L presented this evidence in terms of the cost of repairing the piles, the cost of these repairs amounted to the reduction in value to E-L's property that resulted from MMSD's taking. The majority now reverses the decision of a properly in-

structed jury that determined the amount of compensation based on the evidence before it.

¶ 64. This point is further emphasized by E-L's initial claim that the "taking" was the taking of "portions of the wood piles" supporting the building. Whether MMSD "took" the wood piles or "took" the groundwater, the result was the same: MMSD took a portion of E-L's property, causing a reduction in fair market value to the remainder of that property.

¶ 65. Two early Wisconsin cases support the conclusion that damages are available in the circumstances here. In *Damkoehler v. City of Milwaukee*, 124 Wis. 144, 145, 151, 101 N.W. 706 (1904), the city removed the lateral support for a building when grading an adjacent street, causing portions of the lot "to subside and slide into the excavated street." The court rejected the argument that the damages caused by the excavation of highways were "purely consequential," and permitted recovery under the Takings Clause. *Id.* at 152. The same situation arose in *Dahlman v. City of Milwaukee*, 131 Wis. 427, 439–440, 111 N.W. 675 (1907), and the court adopted the holding in *Damkoehler* for the proposition that "where a substantial part of the adjoining owner's land falls into the street by reason of the removal of its lateral support in the course of grading, there was a taking of the soil for public purposes and not a mere consequential damage." *Id.*

¶ 66. In upholding the jury verdict in the present case, the court of appeals correctly saw "no logical basis to distinguish between the removal of soil providing lateral support and the diversion of groundwater performing essentially the same function—that is, supporting the structural integrity of a building like that owned by E-L Enterprises." *E-L Enters., Inc. v. Milwaukee Metro. Sewerage Dist.*, 2009 WI App 15, ¶ 11, 316

Wis. 2d 280, 763 N.W.2d 231. In neither *Damkoehler* nor *Dahlman* were the landowners seeking compensation for the specific physical property "taken" by the city: in both cases, the damage was caused by the city's act of grading a street. In both cases, like this case, a pattern of events took place: (1) the government performed an action that "took" part of the landowner's property; and (2) the direct consequence of that taking was a reduction in the value of the landowner's property.

¶ 67. The majority distinguishes *Damkoehler* on grounds that the landowner lost the entire value of the property. The court in *Damkoehler,* however, did not limit its holding in that way. It required that the city, in grading a street, "cause no *unnecessary* damage to an adjoining landowner," and asserted that the city's actions resulted in a taking *"to the extent* of such injury." *Damkoehler,* 124 Wis. at 150–51 (emphasis added).

¶ 68. Furthermore, the court in *Dahlman* held that a takings claim could be maintained "where a substantial part" of the property fell into the street. *Dahlman,* 131 Wis. at 440–41. In *Dahlman,* the jury found that the loss of soil "caused no depreciation in the value of the premises." *Id.* at 439. Yet the court permitted the landowner to recover nominal damages against the city. *Id.* at 440. This case is legally indistinguishable from *Dahlman,* save that the jury here determined that the fair market value of E-L's property was reduced by $309,388.

¶ 69. The *Damkoehler* case has been cited in other jurisdictions, including South Carolina. In *White v. Southern Railway Co.,* 140 S.E. 560, 564 (1927), the South Carolina court wrote:

> The word "taken" in the constitutional provision cited is not limited in its meaning and application to cases in

125

which there is an actual physical seizure and holding of property, but is broad enough to include cases in which the access to abutting premises is obstructed by the change of grade of a highway or there is such physical injury to property as results in destruction or substantial impairment of its usefulness. *See* 20 C.J. 697, and the following cases therein cited: *Nevins v. Peoria,* 41 Ill. 502, 89 Am. Dec. 392; *Tinker v. Rockford,* 36 Ill. App. 460; *Hendershott v. Ottumwa,* 46 Iowa 658, 26 Am. Rep. 182; *Offutt v. Montgomery County,* 94 Md. 115, 50 A. 419; *Vanderlip v. Grand Rapids,* 73 Mich. 522, 41 N.W. 677, 3 L.R.A. 247, 16 Am. St. Rep. 597; *Broadwell v. Kansas,* 75 Mo. 213, 42 Am. Rep. 406; *Mosier v. Oregon Nav. Co.,* 39 Or. 256, 64 P. 453, 87 Am. St. Rep. 652; *Stearns v. Richmond,* 88 Va. 992, 14 S.E. 847, 29 Am. St. Rep. 758; *Kincaid v. Seattle,* 74 Wash. 617, 134 P. 504, 135 P. 820; *Damkoehler v. Milwaukee,* 124 Wis. 144, 101 N.W. 706; *Forbes v. Orange,* 85 Conn. 255, 82 A. 559; *Walters v. Baltimore [& Ohio R.]R. Co.,* 120 Md. 644, 88 A. 47, 46 L.R.A. (N.S.) 1128; *Coyne v. Memphis,* 118 Tenn. 651, 102 S.W. 355; *Hamilton County v. Rape,* 101 Tenn. 222, 47 S.W. 416.

## IV

¶ 70.  At the end of the twentieth century, the United States Supreme Court observed that the Takings Clause of the United States Constitution prohibits government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Dolan v. City of Tigard,* 512 U.S. 374, 384 (1994) (quoting *Armstrong v. United States,* 364 U.S. 40, 49 (1960)). The *Damkoehler* court said much the same thing 90 years earlier:

> We are not unmindful that other jurisdictions hold that damages resulting from landslides caused by excavations on highways in the course of improving them for public use are purely consequential, and not recover-

able by the owner. *We find the doctrine of liability under such circumstances more consonant with reason and justice* . . . .

*Damkoehler,* 124 Wis. at 152 (emphasis added).

¶ 71.  Because the majority expects E-L to suffer in legal silence, I respectfully dissent.