TFJ Nominee Trust , Plaintiff-Respondent,†

v.

State of Wisconsin Department of Transportation,
Defendant-Appellant.

Court of Appeals

*No. 00–2099. Submitted on briefs February 27,
2001.—Decided April 24, 2001.*

## 2001 WI App 116

(Also reported in 629 N.W.2d 57.)

†Petition to review denied.

242

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Pamela Magee,* assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Matthew A. Biegert* of *Doar, Drill & Skow, S.C.* of New Richmond.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The State of Wisconsin Department of Transportation (DOT) appeals from orders permanently enjoining the DOT from closing the present connection of Lind Road to Highway 35 as part of an intersection reconstruction project. The orders were issued after the TFJ Nominee Trust, acting pursuant to WIS. STAT. § 32.05(5),[1] challenged the DOT's right to condemn a portion of its property and its alleged access rights to Lind Road. In addition to enjoining the closure and relocation of Lind Road, the orders also invalidate that portion of the condemnation affecting the trust's alleged access rights to Lind Road.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version.

¶ 2. The DOT argues that: (1) the trust's WIS. STAT. § 32.05(5) action is barred because the trust has retained an unnegotiated $18,000 condemnation award check, rather than returning it to the DOT; and (2) even if the trust's action is not barred, such action does not authorize a challenge to the DOT's decision to relocate Lind Road. We conclude that the trust is not barred from bringing a § 32.05(5) action. However, we conclude that this action is not the appropriate procedure to determine whether the trust has access rights to present Lind Road, whether they are being impeded, whether such a taking would be compensable and, if so, how much should be awarded as compensation. We also conclude that there is no basis to set aside the DOT's determination that it is necessary to close and relocate present Lind Road. Accordingly, we reverse the trial court's orders setting aside any part of the condemnation and enjoining the DOT from relocating Lind Road.

## BACKGROUND

¶ 3. In 1999 the trust purchased three parcels located on the southeast corner of the intersection of State Trunk Highways 35 (running north and south) and 70 (running east and west).[2] The smallest, parcel 2, is .625 acres and comprises the majority of a four-sided piece of property that is shaped like a right-angle triangle with the top sheared off. The right-angle corner of the property is bordered on the west by Highway 35 and on the south by the present Lind Road, which

[2] The designations north, south, east and west are approximate directions.

currently allows direct access to Highway 35.[3] Old Lind Road, running northwest, borders the property on the east.

¶ 4. The trust's remaining parcels, comprising over thirty acres, are located due east of parcel 2 on the other side of old Lind Road. The State has not sought to acquire those parcels.

¶ 5. The DOT determined that the intersection of Highways 35 and 70 required widening and reconfiguration, due to a projected increase in traffic. The DOT's design required the DOT to acquire property along the frontage on both sides of Highway 35, including .19 acres of parcel 2. The design also included closing the present Lind Road's access to Highway 35 and creating a new Lind Road, which would run east and west approximately 400 feet south of its current location.

¶ 6. The DOT offered to purchase the frontage land it required from the trust, but the trust refused. The DOT commenced condemnation proceedings pursuant to WIS. STAT. ch. 32. When the trust did not accept the DOT's jurisdictional offer to purchase, *see* WIS. STAT. § 32.05(3), the DOT awarded the trust $18,000 for the portion of parcel 2 required for the construction. *See* WIS. STAT. § 32.05(7).

¶ 7. The trust filed this action pursuant to WIS. STAT. § 32.05(5), contesting the DOT's right to condemn its property.[4] The trust subsequently moved for an

---

[3] There are three roads that bear the name "Lind Road." For purposes of this opinion, we will identify them as "old Lind Road," "present Lind Road" and "new Lind Road."

[4] WISCONSIN STAT. § 32.05(5) provides in relevant part:

COURT ACTION TO CONTEST RIGHT OF CONDEMNATION. If an owner desires to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than

injunction prohibiting the DOT from closing present Lind Road.

¶ 8. The trial court heard testimony at both a preliminary injunction hearing and a court trial. Although the trust did not pursue its initial challenge to the condemnation of .19 acres of parcel 2, it maintained its quest to prevent the closing of the present Lind Road. Ultimately, the trial court granted the trust's request for a permanent injunction. The court's written order also stated that the DOT's "removal of parcel 2's access to the present Lind Road/Highway 35 connection had the effect of a condemnation without compensation and to that extent the action of DOT is overturned."[5] The trial court denied the DOT's subsequent motion for reconsideration. This appeal followed.

### LEGAL STANDARDS

¶ 9. Resolution of this appeal requires interpretation of WIS. STAT. § 32.05, a question of law we review

that the amount of compensation offered is inadequate, the owner may within 40 days . . . commence an action in the circuit court of the county wherein the property is located, naming the condemnor as defendant. Such action shall be the only manner in which any issue other than the amount of just compensation, or other than proceedings to perfect title under ss. 32.11 and 32.12, may be raised pertaining to the condemnation of the property described in the jurisdictional offer. . . . If the action is not commenced within the time limited the owner or other person having any interest in the property shall be barred from raising any such objection in any other manner.

[5] The trial court's orders are silent as to the status of the remainder of the condemned portion of parcel 2. However, because we reverse the trial court's orders and there are no other orders overturning the condemnation, it appears that the DOT's condemnation remains valid.

de novo. *See Miesen v. DOT*, 226 Wis. 2d 298, 304, 594 N.W.2d 821 (Ct. App. 1999). In determining a statute's meaning, our goal is to ascertain the legislature's intent. To make this determination, we first look to the statute's plain language, and if the statute is plain on its face, our inquiry ends. If the statute is ambiguous, however, we may look to the statute's scope, subject matter, and object to ascertain the legislature's intent. *Id.* A statute is ambiguous if reasonably well-informed persons could understand it in more than one way. *Id.* at 304–05. Additionally, the intent of a statute's subsection must be derived from the act as a whole. *Id.* at 305.

¶ 10. Rules of construction for condemnation statutes further guide our interpretation. *Id.* Because the power of eminent domain under WIS. STAT. ch. 32 is extraordinary, we strictly construe the condemnor's power under WIS. STAT. § 32.05, while liberally construing provisions favoring the landowner, including available remedies and compensation. *Id.*

### DISCUSSION

## I. Failure to return an unnegotiated award check

¶ 11. The DOT argues that the trust is barred from contesting the DOT's right to condemn its property because the trust has retained the unnegotiated award check that the DOT sent to it. The DOT cites WIS. STAT. § 32.05(3)(h), which requires that the jurisdictional offer include a notice

[s]tating that if the owner has not accepted such offer as provided in sub. (6) the owner has 40 days

250

from the date of completion of service upon the owner of the offer to commence a court action to contest the right of condemnation as provided in sub. (5); *provided that the acceptance and retention of any compensation resulting from an award made prior to the commencement of such an action shall be an absolute bar to such action.*[6] (Emphasis added.)

The DOT contends that because the trust has not returned the check that the trust received with the award of damage documents, the trust has accepted and retained compensation as defined in § 32.05(3)(h).

¶ 12. In response, the trust argues that retention of an unsolicited check, absent its negotiation, does not bar an action under WIS. STAT. § 32.05. The trial court agreed with the trust, concluding that the suit was not barred because the trust did not cash the check and the money remained in the State's treasury.

¶ 13. At issue is the meaning of the phrase "acceptance and retention of any compensation." Neither the DOT nor the trust has provided this court with any authority to guide our interpretation other than the words of the statute and various dictionary definitions. Additionally, our independent research reveals no previous case interpreting WIS. STAT. § 32.05(3)(h).

█

¶ 14. We must first determine whether the phrase is ambiguous. On one hand, a reasonable person could interpret the words "acceptance . . . of

---

[6] The italicized clause appears only in WIS. STAT. § 32.05 (3)(h), the statute that explains the notice to landowners that must be included in jurisdictional offers. WISCONSIN STAT. § 32.05(5), the statute that provides the actual procedures for contesting condemnations, is silent with respect to the acceptance and retention of compensation.

compensation" as requiring negotiation of the award check. Conversely, Wisconsin courts interpreting the term "acceptance" with respect to contracts have held that one can accept an offer by retaining a check for an unreasonable length of time. *See Hoffman v. Ralston Purina Co.*, 86 Wis. 2d 445, 448, 273 N.W.2d 214 (1979). Applying this same reasoning, one could conclude that a landowner is barred under WIS. STAT. § 32.05(3)(h) when the landowner holds a check for an unreasonable period of time. Because reasonably well-informed persons could understand this statutory phrase in more than one way, we conclude the phrase is ambiguous. *See Miesen*, 226 Wis. 2d at 304–05.

¶ 15. Having concluded that the phrase "acceptance and retention of any compensation" is ambiguous, we turn to extrinsic aids such as the legislative history, scope, context and purpose of the statute to determine legislative intent. *See Racine Educ. Ass'n v. WERC*, 2000 WI App 149, ¶ 50, 238 Wis. 2d 33, 616 N.W.2d 504. WISCONSIN STAT. § 32.05(3)(h) was created during the major revision of condemnation procedures under WIS. STAT. ch. 32 that was accomplished by ch. 639, Laws of 1959. *See Falkner v. NSP*, 75 Wis. 2d 116, 120, 248 N.W.2d 885 (1977).[7] We have examined the legislative drafting records for § 32.05(3)(h) and have located no explanation for the legislature's use of the phrase "acceptance and retention of any compensation" as opposed to "receipt," "acceptance" or "retention." Consequently, the legislative history of § 32.05(3)(h) does not aid us in our interpretation of the phrase.

¶ 16. The rules of interpretation for WIS. STAT. ch. 32 are more helpful. Despite the oft-quoted maxim that condemnation statutes must be strictly construed

---

[7] Since its creation, WIS. STAT. § 32.05(3)(h) has been amended only to make the statute gender-neutral.

because they are in derogation of common law, our supreme court has held that statutory provisions in favor of the owner, such as those that regulate the compensation to be paid, are to be afforded liberal construction. *See Pulvermacher Enters. v. DOT*, 166 Wis. 2d 234, 238, 479 N.W.2d 217 (Ct. App. 1991). Because WIS. STAT. § 32.05(3)(h) concerns the remedies available to the owner, we liberally construe the statute.

¶ 17. This liberal construction leads us to conclude that mere retention of the unnegotiated award check should not bar the landowner's pursuit of a remedy under WIS. STAT. § 32.05(5). Accordingly, we conclude that the phrase "acceptance and retention of any compensation" requires that the landowner negotiate the check and retain the check proceeds before the owner can be barred from contesting the condemnation under § 32.05(5).

¶ 18. , Pursuant to our construction, a landowner who holds rather than cashes an award check is not barred from suit. Additionally, a landowner who negotiates the check but returns the compensation to the DOT before filing suit may still pursue an action contesting the DOT's right to condemn the property.[8] This second scenario, which gives effect to the word "retention," is consistent with the fundamental rule of statutory interpretation that where possible, statutes are to be construed in a manner such that no word is rendered surplusage and every word is given effect. *See Donaldson v. State*, 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980).

---

[8] The landowner is still bound by the strict time limits of WIS. STAT. § 32.05(5), which require the owner to file suit within 40 days.

■ ¶ 19. Because the trust never negotiated the check, it has not accepted and retained any compensation under WIS. STAT. § 35.05(3)(h). Accordingly, the trust's § 35.05(5) action is not barred. *See* WIS. STAT. § 35.05(3)(h).

## II. Review of the orders for injunctive relief

¶ 20. The trust's amended complaint challenged the DOT's right to condemn the necessary portion of parcel 2 on three bases: (1) the DOT's appraisal was inadequate; (2) the DOT did not engage in good faith negotiation with the trust; and (3) the condemnation was unnecessary and was an erroneous exercise of the DOT's discretion. The issue debated at the subsequent hearings, however, was not the DOT's right to condemn a portion of parcel 2.[9] In a written opinion the trial court specifically noted: "[The trust] does not contest the authority of DOT to condemn parcel 2." Rather, the court explained:

> [The trust] challenges the DOT finding of no value for loss of the potential access rights of parcel 2 onto present Lind Road which [the trust] alleges affects the access rights of parcels 1 and 3. [The trust] further challenges the authority of DOT to condemn present Lind Road and move it to a new location as being unnecessary to accomplish the highway project.

¶ 21. The trial court concluded that the DOT's closing of present Lind Road had the effect of a condem-

---

[9] Indeed, the record is unclear whether the trust plans to accept the DOT's compensation award as payment for the condemned portion of parcel 2 or whether it intends to seek additional compensation pursuant to WIS. STAT. § 32.05(9)–(12).

nation without compensation and that it was unnecessary to close present Lind Road. Accordingly, the trial court granted a permanent injunction enjoining the DOT from moving present Lind Road. The DOT challenges the trial court's conclusions and orders.

## A. Challenge to condemnation procedure

¶ 22. We first address the trial court's conclusion that the condemnation of the trust's alleged access rights was procedurally defective. We conclude that the condemnation was not procedurally defective and, therefore, reverse the trial court's order invalidating part of the condemnation of parcel 2.

¶ 23. The trust challenged the condemnation procedure on grounds that the DOT found there was no value for the trust's alleged loss of access rights to present Lind Road. The trust argues on appeal that the DOT

> did one of two things: (1) it failed to consider, appraise or evaluate the rights in any fashion and, as such did not include them in its jurisdictional offer. As such, those rights have not validly been condemned and the DOT cannot now simply take the access. The other alternative is (2) that the DOT evaluated the loss of those access rights as having no value.

¶ 24. The trial court addressed this issue in its written opinion: "The Court finds DOT failed to follow the procedure requiring consideration of access rights to parcels 1 and 3. The Court finds DOT considered access rights to parcel 2 but abused its discretion in finding no damages for loss of access rights."

¶ 25. It is unclear whether the trust is challenging the trial court's findings. We conclude that regardless whether the DOT failed to consider the access rights or evaluated the rights as having no value, the condemnation of parcel 2—the subject of this action—is procedurally valid. If the trust claims the DOT failed to properly condemn the potential loss of access rights (*e.g.,* by not filing a jurisdictional offer for the rights), or that its rights to parcels 1 and 3 have been affected by the closing of present Lind Road, then the trust's remedy is to file an action for inverse condemnation. *See Vivid, Inc. v. Fiedler,* 174 Wis. 2d 142, 147, 497 N.W.2d 153 (Ct. App. 1993) (WIS. STAT. § 32.10 permits the owner of property which has been occupied by a person having the power of condemnation to institute inverse condemnation proceedings), *aff'd as modified,* 182 Wis. 2d 71, 512 N.W.2d 771 (1994).

¶ 26. If instead the trust believes the DOT considered the trust's alleged access rights as part of its appraisal of parcel 2, but erroneously valued the access rights at zero dollars, then the trust's remedy is to seek additional compensation under WIS. STAT. § 32.05(9). *See DOT v. Peterson,* 226 Wis. 2d 623, 627, 594 N.W.2d 765 (1999) (property owners who have had their property condemned under WIS. STAT. ch. 32 may appeal from the award of damages given by the condemning entity by following the "complete and exclusive" procedures set forth in that chapter). In any event the remedy is not to challenge the right to condemn a portion of parcel 2. We therefore reverse the trial court's order invalidating any part of the condemnation of parcel 2.

## B. Challenge to the necessity of closing present Lind Road

¶ 27. The next issue is the trust's challenge to the necessity of closing present Lind Road. We conclude that even if the closing of present Lind Road constitutes a taking by eminent domain, and even if the trust could properly challenge the road's closing in this action, we do not agree that the DOT erroneously exercised its discretion in deciding to close the road.[10] Thus, for purposes of this appeal, we will assume that the trust could properly challenge the road's closing in this action.

### 1. Legal standards governing necessity of taking

¶ 28. The question whether it is necessary to take particular property for public use has been held to be inherently a matter for the legislature. *Falkner*, 75 Wis. 2d at 131. The necessity, expediency, or propriety

---

[10] The DOT argues that if closing the present Lind Road is a taking of property, it is a taking by police power rather than by eminent domain. *See Sippel v. City of St. Francis*, 164 Wis. 2d 527, 533, 476 N.W.2d 579 (Ct. App. 1991) (A taking by eminent domain gives rise to an obligation to compensate the landowner, but a taking by police power involves the power of government to adversely affect property interests without compensation). For purposes of this appeal, we have accepted the trust's assertion that the closing of present Lind Road and the resulting loss of the trust's access rights constitute a taking by eminent domain. If, however, the trust later pursues compensation for its loss of access rights, we do not intend this opinion to bar the DOT's litigation of the issue whether the taking is by eminent domain or by police power.

of exercising the power of eminent domain, and the extent and manner of its exercise, are questions of general policy, and belong to the legislative department of the government. *Id.* The legislature of course may delegate the power of eminent domain, and usually does so. *Id.*

> In determining necessity neither the legislature nor its delegate is limited to takings that are absolutely or indispensably necessary. "Necessary," in this context, has been construed to mean reasonably necessary, reasonably requisite and proper for the accomplishment of the public purpose for which the property is sought; necessary does not mean absolutely imperative.

*Id.* at 132.

¶ 29. Notwithstanding its legislative character, the determination of necessity by the legislature or by its delegate is not completely immune from judicial review. *See id.* However, the scope of review is narrow. The role of courts is not to weigh the evidence and decide if condemnation is necessary. *Grundwald v. Community Dev. Auth.*, 202 Wis. 2d 471, 487–88, 551 N.W.2d 36 (Ct. App. 1996). Rather, the court's role is to decide if the condemning authority's conclusion was based on reasonable grounds and not the result of fraud, bad faith, or a gross abuse of discretion. *Id.* at 488. We review the DOT's determination without deference to the trial court's conclusion that closing the present Lind Road access was unnecessary.

## 2. Review of the DOT's necessity determination

¶ 30. The DOT's engineer testified that the DOT made the decision to close the present Lind Road access

to Highway 35 and move it farther south from the intersection of Highways 35 and 70 for safety reasons. She explained that the general standard is to not allow access points within 2,000 feet of a major intersection. The present Lind Road access to Highway 35 is located approximately 800 feet south of the intersection, and the proposed new Lind Road access would be approximately 400 feet further south.

¶ 31. The engineer testified that although an access road located 1,200 feet from the intersection is still closer than is generally recommended, the DOT concluded that it could safely deviate from the 2,000-foot standard and allow Lind Road to be 1,200 feet from the intersection. This decision was based in part on considerations for the businesses located near the intersection. The engineer explained: "We felt that the damages to the businesses would far outweigh what the safety risks were there." She also stated that in her opinion, leaving Lind Road in its present location "significantly increases the danger to the traveling public."

██

¶ 32. We cannot conclude that the DOT erroneously exercised its discretion in determining the necessity of closing present Lind Road.[11] The DOT provided a reasonable explanation for the decision: maintaining the present Lind Road access would significantly increase the danger to the traveling public. The DOT's need to alleviate that danger by closing and moving Lind Road 400 feet further south provided a reasonable ground for its decision. Just as this court will affirm a trial court's appropriate exercise of discre-

---

[11] The trust does not argue that the DOT's determination of necessity was made in bad faith or fraudulently, the other two bases on which to challenge a determination. *See Falkner v. NSP*, 75 Wis. 2d 116, 132, 248 N.W.2d 885 (1977).

tion even though we may ourselves disagree with the decision, we will not disturb the DOT's determination of necessity in the absence of a "gross abuse of discretion." *See Falkner*, 75 Wis. 2d at 132.

## SUMMARY

¶ 33. We conclude that the trust's challenge to the right to condemn a portion of parcel 2 is not barred even though the trust has retained the unnegotiated award check. However, we conclude that this action is not the appropriate procedure to determine whether the trust has access rights to present Lind Road, whether they are being impeded, whether such a taking would be compensable and, if so, how much should be awarded as compensation. We also conclude that there is no basis to set aside the DOT's determination that it is necessary to close and relocate present Lind Road. Accordingly, we reverse the trial court's orders setting aside any part of the condemnation and enjoining the DOT from closing and relocating present Lind Road.

*By the Court.*—Orders reversed.