COURT OF APPEALS
DECISION
DATED AND FILED

July 20, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP428**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV123

**IN COURT OF APPEALS
DISTRICT IV**

MICHAEL J. MEYERS,

    PLAINTIFF-APPELLANT,

  V.

WISCONSIN DEPARTMENT OF TRANSPORTATION,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Vilas County: LEON D. STENZ, Judge. *Affirmed*.

Before Blanchard, P.J., Graham, and Nashold, JJ.

¶1 GRAHAM, J. Michael J. Meyers, who owns commercial property in northern Wisconsin that abuts a highway, appeals a circuit court order granting summary judgment in favor of the Wisconsin Department of Transportation (the Department). The summary judgment order resulted in the dismissal of three "right-

to-take" claims that Meyers made pursuant to WIS. STAT. § 32.05(5) (2020-21).[1] Specifically, Meyers challenged: (1) the Department's elimination of two curb cuts that Meyers had used to access the highway from his property; (2) a Department order requiring the removal of a sign; and (3) the Department's alleged creation and enlargement of an easement that allowed an adjoining parcel to access and use a driveway on Meyers' property. Meyers also alleges that the Department's actions and the circuit court proceedings violated his due process rights. We conclude that the circuit court properly granted summary judgment to the Department on Meyers' right-to-take claims, and that Meyers' due process arguments fail. We therefore affirm.

## BACKGROUND

¶2    The parcel that Meyers owned when he commenced this lawsuit ("the Meyers parcel")[2] is located in Vilas County and is bordered to the west by U.S. Highway 51. Starting in 2006, the Department undertook a project to significantly reconstruct portions of Highway 51, and the Department's actions in this reconstruction project are the subject of Meyers' complaint. The following facts are taken from the summary judgment materials and, as discussed below, are not subject to any genuine material dispute.

¶3    Before October 2000, the property that became the Meyers parcel was part of a larger tract of land that was owned by Meyers' predecessor in interest,

---

[1]  All references to the Wisconsin Statutes are to the 2020-21 version.

[2]  As mentioned below, Meyers quit claimed a portion of his parcel to another party in 2020, while this lawsuit was pending in the circuit court. We refer to the entirety of the parcel Meyers owned when he commenced this lawsuit as "the Meyers parcel," except when necessary to distinguish between the portion of the parcel that he sold from the portion that he owned after the sale.

Indymac Mortgage, LLC. At that time, there were three driveways on the property that provided direct access to US Highway 51—a permitted driveway on the northern portion of the property's western boundary line ("the northern driveway"); and two unpermitted curb cuts on the southern portion of that boundary line ("the curb cuts").

¶4      In October 2000, Indymac divided the property into two smaller lots, one generally to the east, and the second (which would become the Meyers parcel) generally to the west. Indymac recorded a certified survey of the two lots ("the 2000 survey") with the register of deeds. The 2000 survey noted restrictions on both lots' rights of vehicular egress to and ingress from Highway 51. Specifically, access was limited to the two "proposed driveways" on the lot that would become the Meyers parcel—the existing northern driveway was identified as a proposed driveway as well as an additional southern driveway ("the southern driveway"), but the two existing curb cuts were not. The 2000 survey also noted an access easement over a corner of the Meyers parcel, which would allow the owner of the other lot to access the northern driveway.

¶5      In April 2002, the Department declared a segment of Highway 51, including the portion that abutted these two lots, a controlled access highway pursuant to WIS. STAT. § 84.25. That designation was memorialized in a document that was recorded with the register of deeds.

¶6      Several months later in October 2002, Meyers purchased the Meyers parcel. As of that date, the Meyers parcel was served by the three driveways discussed above—the permitted northern driveway and the two unpermitted curb cuts to the south.

¶7 Following the Department's controlled access designation and its implementation of access controls pursuant to WIS. STAT. § 84.25, all existing driveway permits were superseded and replaced with access authorizations. In 2004 and 2005, the Department recorded several documents with the register of deeds regarding the Meyers parcel's access to Highway 51. These documents recognized the existing access controls placed on the property in the 2000 survey, and provided authorizations for the two access points that had been identified as "proposed driveways" in the 2000 survey—a northern access point in the location of the existing northern driveway, and a southern access point in the location of the proposed southern driveway, between the two unauthorized curb cuts.

¶8 In 2006, the Department started planning for the reconstruction project, which would make improvements and upgrades to Highway 51. As a part of that project, the Department reviewed the access points along Highway 51 and identified several for potential elimination, including the unauthorized curb cuts on the Meyers parcel.

¶9 Between 2012 and 2015, Meyers spoke with Department staff on several occasions regarding access to Highway 51. Meyers indicated that he would send materials with specific requests, but the Department never received any such materials.

¶10 In September 2015, the Department sent a letter to Meyers informing him of its plans regarding the parcel's access to Highway 51. Specifically, the Department proposed to retain the northern driveway, and to construct the southern driveway in the location that had been identified as a proposed driveway in the 2000 survey. The Department also proposed to eliminate the curb cuts. The letter cited the access restrictions noted in the 2000 survey and WIS. STAT. § 84.25 as

authorization for the Department's action. It indicated that the Department was willing to discuss with Meyers the possibility of relocating the southern driveway to an agreed-upon location, but Meyers never made any such request.

¶11 Separately, the Department also determined that it needed to acquire a portion of the Meyers parcel through eminent domain. Between April 2016 and July 2017, the Department attempted to negotiate with Meyers regarding this acquisition, but the parties did not come to an agreement regarding the amount of compensation. In July 2017, the Department served Meyers with a jurisdictional offer, which offered approximately $35,000 to pay for a temporary limited easement on 0.202 acres and to purchase 0.219 acres outright. The Department ultimately acquired this property using its eminent domain authority, and Meyers' claims in this lawsuit do not directly relate to this acquisition.

¶12 Meanwhile, on May 12, 2017, the Department had also issued an order requiring Meyers to remove a sign on his parcel that, according to the Department, violated WIS. STAT. § 84.30 and WIS. ADMIN CODE ch. TRANS 201 (Feb. 2005). The sign-removal order informed Meyers that he had the right to appeal "by filing a written request for a hearing [with the state division of hearings and appeals] within 30 days of the date of this order." Meyers filed a request for a hearing that was dated June 15, 2017, postmarked the following day, and received by the agency on June 19, 2017. The agency ultimately denied Meyers' request for a hearing on the ground that it was untimely, and Meyers did not seek administrative or judicial review of that determination.

¶13　In August 2017, Meyers, proceeding pro se, filed a lawsuit against the Department raising claims under WIS. STAT. § 32.05(5).[3]　Meyers' complaint challenged the Department's authority to "take" his curb cuts, his sign, and the portion of his parcel that is subject to the access easement that benefits the adjoining lot "without identifying which statute [the Department was] relying on" and without paying just compensation.　Meyers alleged that he could not properly challenge these takings until the Department disclosed the statutes that gave it the authority to take his property.　We provide additional information about Meyers' three claims in the discussion section below.

¶14　In September 2017, with Meyers' lawsuit pending, the Department commenced work on the reconstruction project.　At some later point, the Department constructed the northern driveway and the southern driveway consistent with its September 2015 letter, and it removed the two unauthorized curb cuts on Meyers' property.　The Department also removed Meyers' sign.

¶15　Meyers' lawsuit remained pending in the circuit court with little progress over the next several years.　We discuss the various causes of this delay in greater detail below; for now, it suffices to say that the court granted a series of adjournments at Meyers' request or with his approval between February 2018 and April 2019 to allow Meyers to attempt to negotiate a resolution with the Department. Then, in July 2019, after the curb cuts were eliminated, Meyers asked "that matters

---

[3] Meyers' complaint also named Right of Way Professionals, Inc. as a defendant, but the parties later stipulated to that party's dismissal.　Meyers amended his complaint in September 2017, but the differences between the original complaint and the amended complaint are not material to our analysis.　When we refer to Meyers' complaint in this opinion, we are referring to the amended complaint that Meyers filed in September 2017, which is the operative pleading in this case.

6

be put on hold" and the process "slow[ed] down" until Meyers retained an attorney to represent him in the lawsuit.

¶16 On September 1, 2020, with this lawsuit still pending, Meyers quit claimed a portion of his parcel that included the northern driveway to another party. Following this transaction, the remaining portion of the Meyers parcel had a single direct access point to Highway 51: the southern driveway that the Department had constructed as a part of the reconstruction project.

¶17 On November 30, 2021, Meyers and the Department filed cross-motions for summary judgment. Following briefing and a hearing, the circuit court concluded that there were no genuine disputes of material fact and that the Department was entitled to judgment on Meyers' three claims. Accordingly, the court entered an order that granted the Department's motion for summary judgment, denied Meyers' motion for summary judgment, and dismissed Meyers' claims. Meyers appeals the portion of the court's order that granted the Department's motion and dismissed his claims.

## DISCUSSION

¶18 Summary judgment should be granted when there is no genuine dispute of material fact and "a party is entitled to judgment as a matter of law." *McKee Fam. I, LLC v. City of Fitchburg*, 2017 WI 34, ¶27, 374 Wis. 2d 487, 893 N.W.2d 12. We review summary judgment decisions independently from the circuit court, applying the same methodology as that court. *Id.* "The first step of that methodology requires us to examine the pleadings to determine whether a claim for relief has been stated." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). "If a claim for relief has been stated, the inquiry then shifts to whether any factual issues exist." *Id.* "Under [WIS. STAT. §] 802.08(2), summary

judgment must be entered 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (citation omitted).

¶19 We begin our analysis with an overview of the statutory and constitutional framework governing the Department's authority. We then turn to Meyers' claims, explaining why the Department is entitled to judgment on each of the claims as a matter of law. Finally, we address various due process and constitutional arguments that Meyers advances on appeal.

## I. Constitutional and Statutory Framework

¶20 Whenever the Department undertakes a highway construction project, its actions may affect the property rights of abutting property owners. *See generally DEKK Property Dev., LLC v. DOT*, 2023 WI 30, ¶¶13-16, 406 Wis. 2d 768, 988 N.W.2d 653. In such instances, the process used by the Department, the property owner's recourse for challenging the Department's actions, and the remedies available to the property owner all hinge on the "the nature of the challenged governmental action." *Id.*, ¶15.

¶21 The Department may determine that it is necessary to take private property using its eminent domain authority, and if it does, it must pay for that property. *See id.*, ¶13. This is because the government may not take private property for public use without paying just compensation. U.S. CONST. amend. V; WIS. CONST. art. I, § 13. Under the Wisconsin Constitution, government action constitutes a "taking" if it is "'an actual physical occupation' of private property," or if it is a restriction on private property "that deprives an owner 'of all, or substantially all, of the beneficial use of [the owner's] property.'" *E-L Enterprises,*

*Inc. v. Milwaukee Metro. Sewerage Dist.*, 2010 WI 58, ¶22, 326 Wis. 2d 82, 785 N.W.2d 409 (citation omitted). The latter category is often referred to as a "regulatory taking."[4] *Id.*, ¶23.

¶22 When the Department exercises its eminent domain authority to take private property, it must follow the procedures set forth in WIS. STAT. § 32.05. That statute requires, among other things, that the Department obtain an appraisal of the property; provide the appraisal report to the owner; attempt to negotiate with the owner; and, if negotiations are unsuccessful, issue a "jurisdictional offer to purchase the property" that describes the property being taken and the compensation being offered. *DEKK Property Dev.*, 406 Wis. 2d 768, ¶14; *see also* § 32.05(2)(a), (3).

¶23 If a property owner rejects the jurisdictional offer, the owner may seek recourse under a variety of statutes. *Id.*, ¶15 & n.4. If the owner wishes to contest the amount of compensation offered, the owner may file an action under WIS. STAT. § 32.05(9) seeking additional compensation. Alternatively, if the owner wishes to contest the Department's right to take property "described in the jurisdictional offer" for a reason other than the amount of compensation offered, the owner may file a right-to-take action under § 32.05(5). *Id.*, ¶15 (citing *TFJ Nominee Tr. v. DOT*, 2001 WI App 116, ¶¶25-26, 244 Wis. 2d 242, 629 N.W.2d 57).

---

[4] Similarly, under the United States Constitution, government conduct gives rise to a taking when there is "either: (1) 'direct government appropriation or physical invasion of private property' or (2) government regulation of private property that is 'so onerous that its effect is tantamount to a direct appropriation.'" *E-L Enterprises, Inc. v. Milwaukee Metro. Sewerage Dist.*, 2010 WI 58, ¶22, 326 Wis. 2d 82, 785 N.W.2d 409 (citation omitted) (explaining that "[t]he latter category, deemed a 'regulatory taking,' is per se compensable under the Fifth Amendment if the regulation 'requires an owner to suffer a permanent physical invasion of her property' or 'completely deprives an owner of all economically beneficial use of her property.'" (citation omitted)).

¶24 By contrast, when the government takes private property without issuing a jurisdictional offer and without paying just compensation, the property owner's recourse is to file an inverse condemnation claim pursuant to WIS. STAT. § 32.10. *Id.*, ¶33; *see also E-L Enterprises*, 326 Wis. 2d 82, ¶¶36, 38. This remedy is available to property owners who allege that the Department took a property right without properly exercising its eminent domain authority under the procedures set out in WIS. STAT. § 32.05(5). *See TFJ Nominee Tr.*, 244 Wis. 2d 242, ¶25.

¶25 When the Department undertakes a highway construction project, it also has authority to take certain actions pursuant to its police power, which is different from its eminent domain authority. *See DEKK Property Dev.*, 406 Wis. 2d 768, ¶13. The Department acts under its police power "when it regulates in the interest of public safety, convenience, and the general welfare of the public." *Hoffer Properties LLC v. DOT*, 2016 WI 5, ¶¶17-18, 366 Wis. 2d 372, 874 N.W.2d 533 (lead op.) (citing *Nick v. State Highway Comm'n*, 13 Wis. 2d 511, 513-14, 109 N.W.2d 71 (1961)); *id.*, ¶49 (Abrahamson, J., concurring).

¶26 An injury to property that results from the Department's exercise of its police power is generally not compensable, unless the injury amounts to a regulatory taking because it deprives a property owner of all, or substantially all, beneficial use of the property. *See DEKK Property Dev.*, 406 Wis. 2d 768, ¶13 (internal citation omitted); *Hoffer Properties*, 366 Wis. 2d 372, ¶¶17-18 (lead op.) (explaining that not all injuries to property are considered takings for constitutional purposes); *id.*, ¶49 (Abrahamson, J., concurring); *see also E-L Enterprises*, 326 Wis. 2d 82, ¶33 (explaining that mere consequential damage to property is not a taking).

¶27 Our supreme court has explained that the Department exercises its police power, rather than its eminent domain authority, when it designates a highway as "controlled access." *Hoffer Properties*, 366 Wis. 2d 372, ¶20 (lead op.); *id.*, ¶49 (Abrahamson, J., concurring); *see also* WIS. STAT. § 84.25(3) (granting the Department the authority to change access points in whatever way it deems necessary or desirable after such a designation has been made). And our supreme court has concluded that "no compensable taking occurs when the Department changes an abutting property owner's access to a controlled access highway if other access is provided that does not deprive the owner of all or substantially all beneficial use of the property." *Id.*, ¶31 (lead op.) (citing WIS. STAT. § 32.09(6)(b) (providing that a deprivation or restriction of existing access rights may be compensable under § 32.09(6) except where the government acts under a duly authorized exercise of its police power)); *see also id.*, ¶¶32-33 (lead op.) (internal citations omitted); *id.*, ¶49 (Abrahamson, J., concurring).[5]

¶28 In many cases, a highway construction project may involve multiple discrete acts that do not "necessarily merge … into one single compensable act." *118th St. Kenosha, LLC v. DOT*, 2014 WI 125, ¶33, 359 Wis. 2d 30, 856 N.W.2d 486. Some of the Department's projects may constitute a compensable exercise of eminent domain authority and others may involve a non-compensable exercise of police power. *DEKK Property Dev.*, 406 Wis. 2d 768, ¶13 (citing *118th St. Kenosha*, 359 Wis. 2d 30, ¶32). For each discrete project, the proper recourse available to a property owner hinges on whether the Department has acted pursuant to its eminent domain authority, its police powers, or some other authority. *See*

---

[5] If the access the Department provides to a controlled access highway results in a regulatory taking, the change in access may support an inverse condemnation claim pursuant to WIS. STAT. § 32.10. *Hoffer Properties, LLC*, 2016 WI 5, ¶33, 366 Wis. 2d 372, 874 N.W.2d 533 (lead op.); *see also E-L Enterprises*, 326 Wis. 2d 82, ¶¶36, 38.

***DEKK Property Dev.***, 406 Wis. 2d 768, ¶13; ***Hoffer Properties***, 366 Wis. 2d 372, ¶¶17-18 (lead op.); ***id.***, ¶49 (Abrahamson, J., concurring). "[E]ven if a highway construction project results in damages that are compensable under a particular statute, those damages cannot be recovered in a claim brought under the wrong statute." ***DEKK Property Dev.***, 406 Wis. 2d 768, ¶15 (internal citation omitted).

## II. Meyers' Claims

¶29 With those principles in mind, we turn to Meyers' claims. As noted, Meyers commenced this action under WIS. STAT. § 32.05(5), challenging the Department's right to take: (1) two curb cuts that provided access to Highway 51; (2) a sign; and (3) a portion of the Meyers parcel for an access easement benefiting the adjoining lot. Meyers' complaint, summary judgment materials, and appellate briefing also allege a host of due process violations by the Department, some that are related to the claims described above and others that stem from the Department's conduct during the course of this litigation. On appeal, Meyers' appellate briefing contains multiple arguments that the circuit court erred in granting summary judgment, and it also asserts that aspects of the circuit court proceedings violated his due process rights.

¶30 We begin by briefly addressing a singular reason, discussed in our supreme court's recent decision in ***DEKK Property Development***, 406 Wis. 2d 768, why all three claims fail as a matter of law. We go on to separately address why each claim would have failed had Meyers pursued it as an inverse condemnation claim, discussing some but not all of his due process arguments against the Department along the way. We conclude by addressing Meyers' remaining due process and constitutional claims.

## A. Meyers Claims Are Not Right-to-Take Claims

¶31 As noted, the first step of the summary judgment methodology is to "examine the pleadings to determine whether a claim for relief has been stated." *Green Spring Farms*, 136 Wis. 2d at 315. Here, the Department is entitled to judgment on all three of Meyers' WIS. STAT. § 32.05(5) right-to-take claims for a singular reason—Meyers cannot obtain relief under § 32.05(5) because the property rights he alleges were taken were not described in any jurisdictional offer.

¶32 Right-to-take actions are governed by WIS. STAT. § 32.05(5), which provides, in relevant part:

> If an owner desires to contest *the right of the condemnor to condemn the property described in the jurisdictional offer* for any reason other than that the amount of compensation offered is inadequate, such owner may within 40 days from the date of personal service of the jurisdictional offer … commence an action in the circuit court …. Such action shall be the only manner in which any issue other than the amount of compensation … may be raised pertaining to the condemnation of the property described in the jurisdictional offer.… Nothing in this subsection shall be construed to … prevent the condemnor from proceeding with condemnation during the pendency of the action to contest the right to condemn.

(Emphasis added.)

¶33 As our supreme court explained in a decision issued earlier this year, such actions "are limited to issues 'pertaining to the condemnation of the property described in the jurisdictional offer,'" and may not be used to challenge the Department's actions with respect to property that is not described in a jurisdictional offer. *DEKK Property Dev.*, 406 Wis. 2d 768, ¶18 (citing WIS. STAT. § 32.05(5)). In *DEKK Property Development*, for example, the property owner filed a right-to-take action challenging the Department's closure of a driveway, and the court

13

determined that the owner was not entitled to relief under § 32.05(5) because the Department's jurisdictional offer did not describe any removal of access to the highway. *Id.*, ¶¶1, 18, 21.

¶34 Like the property owner in *DEKK Property Development*, Meyers' WIS. STAT. § 32.05(5) right-to-take action fails because he challenges the Department's actions with respect to property that is not described in a jurisdictional offer. Here, the Department issued a jurisdictional offer to Meyers with respect to the Highway 51 reconstruction project, but that offer was limited to a temporary limited easement over a portion of the Meyers parcel and the purchase of another portion of the parcel in fee simple. As Meyers acknowledged during the circuit court proceedings, the jurisdictional offer he received did not address the property and access rights that he contends were improperly taken in his case. Consistent with our supreme court's decision in *DEKK Property Development*, the Department is entitled to judgment on all three of Meyers' § 32.05(5) right-to-take claims on this basis alone.

¶35 Although this conclusion is dispositive, we proceed to explain why Meyers' claims would fail had he filed them in an action for inverse condemnation. We do so because *DEKK Property Development* is a newer decision that neither party has had an opportunity to brief, and because Meyers has invested significant effort in pursuing his claims against the Department.

## B. Any Factual Disputes Are Not Genuine or Material, and the Department is Entitled to Judgment as a Matter of Law

¶36 At the outset, we consider an assertion that Meyers makes in his appellate briefing that is common to all three claims—that this case involves

14

numerous factual disputes that should be resolved by a jury.[6] Meyers asserts that he "was far from completing discovery" and "is not asking for a decision on these matters," and he contends that the "overwhelming disputes of significant material facts" preclude summary judgment in favor of the Department.[7]

¶37    Meyers' argument about factual disputes fails because he does not identify any specific disputes that are genuine, material, and preclude judgment as a matter of law.  At best, he directs us to "review the arguments for the three original complaints," "the guiding statutes, and affidavits, material evidence[,] case law, and [the] exhibits."  But "it is not the duty of this court to sift and glean the record … to finds facts which will support [Meyers'] argument." *Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990) (citation omitted); s*ee* WIS. STAT RULE 809.19(1)(e).  If there are factual disputes that are genuine and material, it is Meyers' responsibility to identify those disputes in his appellate briefing.

¶38    Based on our own review of the record, we have not identified any genuine disputes of material fact.  To be sure, Meyers' affidavits dispute certain facts posed by the Department's summary judgment materials, and his affidavits allege other facts that the Department disputes.  However, as we explain below, such

___

[6] Meyers also points to the "overwhelming disputes" between the parties regarding "matters of law."  However, the existence of disputed issues of law does not defeat a motion for summary judgment.  "The well-established purpose of summary judgment procedure is to determine the existence of genuine factual disputes in order to 'avoid trials where there is nothing to try,'" and there is "nothing to try" when the only disputes are over legal issues that are properly decided by a court. *See Yahnke v. Carson*, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102 (citation omitted).

[7] If additional discovery is needed to obtain evidence necessary to rebut a summary judgment motion, a party may ask the circuit court to delay the matter until that discovery is complete. *See* WIS. STAT. § 802.08(4); *see also Kinnick v. Schierl, Inc.*, 197 Wis. 2d 855, 865, 541 N.W.2d 803 (Ct. App. 1995).  Here, Meyers did not ask the court to delay its decision so that he could take additional discovery; he instead filed his own motion for summary judgment.  He cannot now reasonably argue that the circuit court's summary judgment ruling deprived him of the opportunity to conduct necessary discovery or a fair opportunity to be heard.

disputes are either immaterial to the resolution of Meyers' claims, or the disputes are not genuine because Meyers does not have admissible evidence to support the facts he alleges. *See Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶32, 236 Wis. 2d 435, 613 N.W.2d 142 ("a 'material fact' is one that impacts the resolution of the controversy"); *id.* ("[a] factual issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *see also Helland v. Kurtis A. Froedtert Mem'l Lutheran Hosp.*, 229 Wis. 2d 751, 756, 601 N.W.2d 318 (Ct. App. 1999) ("A party opposing summary judgment must set forth 'specific facts,' evidentiary in nature and admissible in form …. It is not enough to rely upon unsubstantiated conclusory remarks, speculation, or testimony which is not based on personal knowledge.").

¶39 With this in mind, we comment on each of Meyers' three claims.

### 1. The Curb Cuts

¶40 Meyers disputes the Department's removal of two unauthorized curb cuts that, prior to the reconstruction project, provided access to Highway 51 from the southern portion of his property.[8] Meyers contends that the Department lacked the authority to remove these curb cuts, or perhaps that Meyers was entitled to just compensation for their removal. As we now explain, Meyers' claim regarding the

---

[8] In his appellate briefing, Meyers appears to allege that at least one of these curb cuts was "permitted," and he makes various arguments to the effect that the Department lacked the statutory authority to remove a "permitted" curb cut or failed to comply with the proper procedures for doing so. Meyers' assertion that the curb cut was "permitted" is supported solely by an averment in Meyers' affidavit, which does not demonstrate Meyers' personal knowledge of the alleged fact and is therefore insufficient to create a genuine dispute of material fact. The remaining submissions on file show that, among other things, all existing driveway permits were superseded with access authorizations in 2004, following the Department's controlled access designation.

curb cuts fails because the Department had the authority to remove the curb cuts based on its police power and without paying just compensation.

¶41 As noted, the Department exercises its police power when it designates a highway as a "controlled access" highway, *Hoffer Properties*, 366 Wis. 2d 372, ¶¶19-20 (lead op.) (citing WIS. STAT. § 84.25(1)); *id.*, ¶49 (Abrahamson, J., concurring), and in so doing, the Department must comply with an elaborate set of statutory procedures, *see* § 84.25(1). After a controlled access designation has been made, abutting property owners' access rights are curtailed. *See* § 84.25(4), (5), (6). The Department may change an abutting owner's access to the controlled access highway without compensation, *see* WIS. STAT. § 32.09(6)(b), in whatever way it "deems necessary and desirable," *see* § 84.25(3), so long as the property owner continues to have reasonable access through other means. *Hoffer Properties*, 366 Wis. 2d 372, ¶22, 30 (lead op.). The *Hoffer Properties* lead opinion cited with approval cases that have concluded that access to a controlled access highway by a more circuitous route rather than directly may constitute reasonable access, and does not necessarily amount to a regulatory taking. *Id.*, ¶30 (lead op.); *see also id.*, ¶27 (lead op.) (surveying Wisconsin case law).

¶42 Here, as discussed, the Department designated the segment of Highway 51 that abuts Meyers' parcel as a controlled access highway in 2002, several months before Meyers purchased the parcel. When the Department removed the two curb cuts on Meyers' property, it was acting pursuant to its police powers under WIS. STAT. § 84.25, not its eminent domain authority. *See Hoffer Properties*, 366 Wis. 2d 372, ¶¶22, 31 (lead op.) (explaining that, following a controlled access designation, the Department acts pursuant to a duly authorized exercise of police power); *id.*, ¶49 (Abrahamson, J., concurring). Meyers is not entitled to compensation unless the removal of access amounted to a regulatory taking. And

17

here, following the removal of the two unauthorized curb cuts, Meyers' parcel still had two direct access points to Highway 51—the existing northern driveway and the new southern driveway, which the Department constructed at a location between where the two curb cuts had been.[9] Meyers does not and cannot show that his parcel lacks reasonable access to Highway 51, and as such, that his property has been deprived of all or substantially all of its beneficial use as a result of the closing of the curb cuts. Therefore, Meyers is not entitled to compensation for the Department's removal of the curb cuts.

¶43 Meyers makes an argument that harkens back to 2002. Specifically, he contends that the Department did not properly designate Highway 51 as a controlled access highway.[10] But Meyers cites no authority to support the proposition that he can challenge the propriety of the designation in this lawsuit, which was filed more than fifteen years after that designation was made. As was explained in the *Hoffer Properties* lead opinion, "[a]n abutting property owner's opportunity to object to the [Department]'s exercise of … police power comes at the time of the hearing on whether to designate the highway 'controlled-access.'" *Id.*, ¶22 (lead op.).

¶44 Separately, Meyers contends that the Department's removal of the curb cuts violated his due process rights because the Department did not provide Meyers with "notice" that it would be removing the curb cuts; it did not identify the

---

[9] Meyers' 2020 sale of a portion of his parcel left his property with just one direct access point to Highway 51, but it was Meyers' choice to sell.

[10] Specifically, Meyers contends that WIS. STAT. § 84.25 permits the Department to designate only "rural" portions of the state trunk system controlled access, and this segment of Highway 51 is in a concentrated commercial district. Meyers also takes issue with the newspaper that the Department selected to publish notice of the public hearing required under § 84.25.

statutes upon which it was relying to remove them; and it did not provide Meyers with an opportunity to be "heard." This contention fails on the facts and the law.

¶45    As for the facts, the Department's summary judgment materials demonstrate that, among other things, it recorded a notice of non-access on the Meyers parcel in March 2004, it notified him of its plans to eliminate the curb cuts no later than its September 2015 letter, and both documents referenced WIS. STAT. § 84.25 as the source of the Department's authority. Meyers' summary judgment materials do not raise any genuine dispute regarding these historical facts. Indeed, Meyers' claim that he was unaware that the Department was eliminating the curb cuts pursuant to § 84.25 rings hollow—his complaint expressly challenged the Department's authority to remove the two curb cuts pursuant to that very statute.

¶46    Turning to the law, as stated, WIS. STAT. § 84.25(3) is the source of the Department's authority to restrict access to a controlled access highway, and, in stark contrast to the elaborate procedures governing the Department's exercise of eminent domain authority, § 84.25(3) does not impose any notice requirements or any right to an administrative hearing either before or after the Department eliminates a property owner's direct access points. *See id.*, ¶¶23-29 (interpreting and discussing § 84.25). Meyers cites no authority to support his assertion that he was entitled to notice or a right to a hearing in this instance. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not consider arguments that are unsupported by legal citations or are otherwise undeveloped).

### 2.  The Sign-Removal Order

¶47    Meyers also challenges the Department's issuance of a written order declaring that a commercial sign on the parcel was illegal and directing him to remove it. Meyers alleges that the Department erroneously determined that the sign

was illegal, and he takes issue with various aspects of the Department's sign-removal order.

¶48    WISCONSIN STAT. § 84.30 governs the regulation of outdoor advertising, including the issuance of sign-removal orders and the compensation required when the Department orders a sign to be removed. Under § 84.30(6), the Department "must pay just compensation for certain categories of signs that it removes or relocates that are not in conformity with the statute, including signs lawfully in existence on March 18, 1972, and signs lawfully erected after that date." *Lamar Cent. Outdoor, LLC v. DOT*, 2008 WI App 187, ¶21, 315 Wis. 2d 190, 762 N.W.2d 745. By contrast, if a sign is illegal or has lost its lawful nonconforming use status, the Department may remove the sign without paying any compensation to the owner upon sixty days' notice. *Id.*, ¶¶23, 26 (citing § 84.30(11)).

¶49    A person receiving such a notice has a right to an administrative hearing before the state division of hearings and appeals, and to judicial review of that administrative decision under WIS. STAT. ch. 227. *See* WIS. STAT. § 84.30(18). In *Lamar Central Outdoor*, we concluded that the review process in § 84.30(18) is the exclusive procedure for determining the legality of a sign after a removal order has been issued, and that "a determination under § 84.30(18) that [a] sign is legal is a necessary predicate to just compensation for the sign under the statutory scheme." *Lamar Cent. Outdoor*, 315 Wis. 2d 190, ¶1. Because the sign owner in *Lamar Central Outdoor* commenced an action in court without having exhausted the exclusive administrative and judicial review procedures in § 84.30(18), we concluded that his claim was procedurally barred. *Id.*, ¶¶36-37.

¶50    So too here. Meyers attempted to initiate the WIS. STAT. § 84.30(18) process, but the division of hearings and appeals determined that his appeal was not

timely, and he did not seek judicial review of that administrative order. Accordingly, as in *Lamar Central Outdoor*, Meyers' claim is procedurally barred. A determination under § 84.30(18) that a sign is legal is a necessary predicate to receiving just compensation, and without such a determination here, the Department is entitled to judgment on Meyers' claim.[11]

### 3. The Access Easement

¶51    Finally, Meyers argues that the Department illegally took a portion of his parcel for an access easement that benefits the adjoining parcel. This argument has two discrete parts: Meyers contends that the Department forced his predecessor in interest, Indymac, to grant the access easement as part of Indymac's division of its parcel into two lots in 2000; and he also contends that the Department improperly expanded the access easement beyond its original dimensions during the current highway reconstruction project.

¶52    Meyers' argument about the forced granting of the access easement fails. Even assuming that Meyers could raise a genuine dispute that the Department

---

[11] In his appellate briefing, Meyers does not respond to the Department's argument about *Lamar Central Outdoor*'s procedural bar, and instead merely reasserts the arguments that he made in the circuit court regarding the legality of the Department's sign removal order. For instance, Meyers argues that the Department lacked "jurisdiction" or "authority" over the sign because the sign was regulated by the town; he also contends that, given the opportunity, he could show that, contrary to the Department's order, the sign was not illegal. These arguments do not address the dispositive issue that Meyers' claim is procedurally barred, and we reject them on that basis.

We pause to comment on one specific argument Meyers continues to advance on appeal that is contradicted by the record. Meyers contends that, in issuing the sign removal order, the Department violated his due process rights because it failed to identify the statute that gave the Department authority to remove his sign. This assertion is contradicted by the text of the sign removal order, which stated that the sign was illegal under WIS. STAT. § 84.30(11) and informed Meyers that he could challenge the Department's determination under § 84.30(18) by filing a notice of appeal within 30 days of receiving the order.

was involved in the lot division, which is no small assumption in Meyers' favor,[12] Meyers cites no authority that would allow him to challenge actions the Department took in 2000, before Meyers owned the parcel in question.

¶53    Turning to Meyers' argument that the Department "expanded" or "altered" the access easement during the reconstruction project, this argument is not supported by evidentiary facts.  Meyers' own affidavit avers that the alleged expansion of the easement is documented in a survey that was conducted in 2021.  However, the 2021 survey does not, standing on its own, show an expansion of the access easement, and a comparison of the 2021 survey with the 2000 survey appears to confirm that the access easement continues to be in the same location that it has been since it was granted in 2000.

¶54    For all of these reasons, in addition to Meyers' improperly bringing his claims in a right-to-take action, we conclude that the Department is entitled to summary judgment.

---

[12] Meyers submitted an affidavit in which he avers that "WisDOT had previously forced an adjoining parcel to trespass on [the Meyers parcel] by insisting [an easement] be drafted onto the survey at the time the [Indymac] parcel was divided into two parcels."  However, Meyers does not point to any documents to support the assertion that the access easement was included in the 2000 survey based on the Department's insistence, nor does he explain how this assertion is based on personal knowledge.  There is a good reason to suspect that Meyers' assertion is not based on personal knowledge, given that he did not purchase his parcel until 2002, and he does not indicate that he had any role in Indymac's division of the parcels or the creation of the 2000 survey.

### III. Additional Due Process Arguments

¶55    Before concluding, we address Meyers' additional arguments that the Department's conduct and the circuit court proceedings violated his due process rights for a variety of reasons not specifically addressed above.[13]

¶56    Meyers first contends that the Department violated his due process rights during the litigation by "suppressing" the statutes that gave it the authority to eliminate his curb cuts and sign.  This argument fails for multiple reasons, some of which we have already discussed.  As mentioned, the undisputed facts demonstrate that the Department's pre-litigation notices and correspondence identified WIS. STAT. § 84.25 as the source of its authority to eliminate the curb cuts and WIS. STAT. § 84.30 as the source of its authority to order the removal of his sign.  Then, during the litigation, the Department identified these same statutes in response to a 145-page "Motion for Timely Disclosure of Material Facts and Enclosed Exhibits" that Meyers filed, which the Department construed as discovery requests.  Meyers did not serve any additional requests, nor did he take any steps in the circuit court to compel any additional responses to his requests.  Meyers appears to be arguing that he was entitled to more specific information than what the Department repeatedly provided to him, but he cites no legal authority to support that position.

¶57    Second, Meyers contends that, by statute, his right-to-take action was to "be given precedence over all other actions in said court then not on trial," WIS. STAT. § 32.05(5), and that the circuit court's failure to hold a hearing between the filing of his lawsuit in 2017 and the closure of the curb cuts in or around 2019

---

[13]  To the extent that we do not address any argument raised by Meyers in his briefing, we have considered it and reject it as undeveloped.  *See **State v. Jacobsen***, 2014 WI App 13, ¶16, 352 Wis. 2d 409, 842 N.W.2d 365 (Ct. App. 2013) (a court need not address undeveloped arguments).

violated his due process rights. This delay-based argument fails for multiple reasons, including that the statutory preference is for right-to-take actions, and we have determined that Meyers' claims were not the proper subject of a right-to-take action. The argument also fails based on the record, which shows that Meyers himself requested multiple adjournments and delays during the circuit court proceedings, which resulted in him not receiving a prompt hearing on his claims.[14] Finally, the argument fails because Meyers has not shown how any delay affected his substantial rights and warrants a remedy. *See* WIS. STAT. § 805.18(2); *Martindale v. Ripp*, 2001 WI 113, ¶32, 246 Wis. 2d 67, 629 N.W.2d 698 ("For an error 'to affect the substantial rights' of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue.").

¶58 Third, Meyers asserts that the circuit court deprived him of the right to counsel. To be clear, "there is no express constitutional guarantee of representation by counsel in a civil matter" such as this case. *Village of Big Bend*

---

[14] The amended complaint was filed in September 2017. Between February of 2018 and April of 2019, the court scheduled a series of status conferences, and on each occasion Meyers, or the Department with Meyers' approval, requested adjournments on the ground that Meyers was making efforts to reach a settlement with the Department. In April 2019, the circuit court issued a scheduling order that would have imposed a July 10, 2019 deadline for discovery and dispositive motions. However, on July 9, 2019, Meyers filed a brief suggesting "that matters be put on hold." He indicated that, since the curb cuts (and possibly the sign) had already been eliminated, "[e]xpediency is now by the wayside and Meyers would prefer to slow the process down until representation can be acquired."

The circuit court slowed the process down, consistent with Meyers' request. Following a scheduling conference in March 2020, the court issued a new scheduling order, which provided that Meyers' jury trial demand and jury fee payment had to be made by April 9, 2020, and that Meyers had agreed to obtain counsel, if desired, by April 13, 2020. Meyers did not make a jury demand or pay the jury fee, nor did he retain counsel at that time or at any other point in the litigation. The case appears to have been more or less dormant until June 2021, when the court issued another scheduling order requiring dispositive motions to be filed by November 2021. The parties' summary judgment motions followed, and the court issued its decision in January 2022.

*v. Anderson*, 103 Wis. 2d 403, 405, 308 N.W.2d 887 (Ct. App. 1981). Even more importantly, Meyers' assertion is not consistent with the record. The record shows that the court granted Meyers' multiple requests to delay the case so that he could obtain counsel, yet Meyers did not retain any attorney over the course of many months. One of the court's scheduling orders set forth an agreed-upon deadline for Meyers to obtain representation, but the court also informed Meyers that it would not prevent an attorney from entering an appearance at a later date, should Meyers retain an attorney.

¶59    Fourth, Meyers argues that the circuit court deprived him of his right to a jury trial. He contends that he did not forfeit his right to a jury trial by failing to pay the jury fee by the deadline in the scheduling order, but this argument is beside the point. A party is not entitled to a trial, jury or otherwise, if there is no genuine issue as to any material fact and the opposing party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). We have concluded that the circuit court correctly determined that that standard was satisfied in this case.

¶60    Finally, Meyers makes additional miscellaneous complaints about how the circuit court handled various aspects of the proceedings. For example, he had difficulty with his telephone connection during one of the scheduling conferences; at points there was confusion about whether Meyers was filing and receiving documents electronically or through conventional means; and, according to Meyers, the court did not read all of his filings. Assuming without deciding that Meyers has sufficiently established the events he complains about, to the extent that Meyers is alleging that any of these alleged errors violated his due process rights, he does not explain how; nor does he explain how they affected his substantial rights. *See Pettit*, 171 Wis. 2d at 646; WIS. STAT. § 805.18(2); *Martindale*, 246 Wis. 2d 67, ¶32.

25

## CONCLUSION

¶61    The circuit court's order is affirmed.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.